Linda O'NEAL, Appellant,

v.

RICELAND FOODS, Appellee.

No. 81–2397.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1982.

Decided July 29, 1982.

Friday, Eldredge & Clark by Frederick S. Ursery, Little Rock, Ark., for appellee.

Johnson & Humphrey Law Office, Pine Bluff, Ark., for appellant.

Before ROSS, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges.

STEPHENSON, Senior Circuit Judge.

Plaintiff-appellant Linda O'Neal appeals the district court's [1] award of partial summary judgment to defendant-appellee Riceland Foods (Riceland) and appeals the judgment entered in favor of Riceland at the close of a one-day trial to the court. O'Neal, a black female, had alleged that her termination from Riceland was based upon her race. On appeal, she argues that she established a prima facie case of discriminatory firing and that appellee did not rebut this case by articulating a legitimate, non-discriminatory reason for her termination. Additionally, she contends that the court erred in granting partial summary judgment on her claim of discriminatory hiring and in denying her motion for class certification. O'Neal's last argument is that the court erred in sustaining Riceland's objections to her fourth set of interrogatories. We affirm the district court.

I. BACKGROUND

On February 3, 1977, O'Neal was hired by Riceland as a temporary employee. She filled in for an employee on maternity leave and worked as a traffic clerk in the traffic department. On April 22, 1977, the regular traffic clerk returned to work and O'Neal's position with the company ended. A few days later, on April 26, 1977, she was hired as a regular employee and assigned to work as an office clerk in the customer service department.

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

For approximately the first month of her employment, O'Neal typed shipping orders. However, in June, Riceland made a facility-wide changeover to an IBM computer system and all orders had to be entered on a CRT (cathode ray tube). A CRT is a computer component consisting of a keyboard similar to a typewriter and a screen upon which the information is projected. The data processing department at Riceland trained the employees to operate the CRTs.

Joe Couch supervised the CRT training and was actively involved in the training given to Riceland employees. Couch and his assistant, Lynn Doepel, attempted to train O'Neal on the use of a CRT. At trial, Couch testified that all of the people he had trained in the customer service department, including two other blacks, learned to successfully operate the CRT in two weeks or less without any difficulty. However, after Couch and Doepel had spent two weeks training O'Neal they decided to modify her training because she was having problems. Couch further stated that O'Neal was given the modified training for an additional two weeks, but she still was not at the point where she could be released as a trained person. Couch and Doepel then went to O'Neal's supervisor, Carl Dintesman, and explained the problems O'Neal was having and stated they had been unable to train her. Dintesman asked them to give her more training so they worked with O'Neal for three additional weeks. At that point they decided they had done all they could for her. Couch testified that he did not tell Dintesman to fire O'Neal but that he had conveyed to Dintesman that the trainers did not feel she was qualified to do the job.

Additionally, Dintesman testified that two white coworkers of O'Neal's, Laverne Madar and Patsy Locke, complained that they were spending a lot of their time correcting O'Neal's errors and doing O'Neal's work. They indicated to Dintesman that O'Neal was not going to be able to do the job.

On August 25, 1977, Dintesman terminated O'Neal for her inability to operate a CRT. She was replaced by a white employee. Dintesman testified that his decision was based upon the reports from Couch and Doepel and upon the reports of O'Neal's co-workers. He stated that color had nothing to do with his decision.

On October 13, 1977, O'Neal filed a timely charge with the EEOC asserting that her termination had been based upon her race. O'Neal was issued a right-to-sue letter on September 21, 1978, and she then filed the instant lawsuit. Prior to trial, the court granted Riceland's motion for partial summary judgment on the issue of discriminatory hiring and also sustained Riceland's objections to several interrogatories in O'Neal's fourth set of interrogatories. After a one-day trial, the court entered judgment in favor of Riceland.

## II. ANALYSIS

### A. *Discriminatory Firing*

 The district court's findings of fact included the findings that O'Neal "was terminated because she had insufficient aptitude to perform the job required after the Customer Service Department converted to an IBM computer system" and that "race played no part" in her termination. The court concluded that O'Neal had failed to establish a prima facie case of discrimination and also that even if it is assumed that a prima facie case was established, Riceland sustained its burden of articulating some legitimate, nondiscriminatory reason for her termination. The court stated: "We do not find that there is any substantial proof in this record that the company's personnel action was a pretext for racial discrimination." *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

 O'Neal challenges the above conclusions and argues that her statistical evidence showed evidence of discrimination in that eighteen percent of the work force in the county is black yet only six to eight percent of Riceland's full time clerical employees are black. She argues that two of her witnesses testified that the operation of a CRT required minimal typing skills and average verbal ability. O'Neal contends

that Madar disliked her because of her race and was able to cause her termination by Dintesman, a white supervisor.

Our review of the district court's findings of fact is limited by the clearly erroneous rule. *See Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982). Additionally, we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Kendrick v. Commission of Zoological Subdistrict,* 565 F.2d 524, 526 (8th Cir. 1977). After reviewing the record, we are unable to conclude that the district court's findings are clearly erroneous.

O'Neal's statistical evidence was indefinite and incomplete. The statistician, Damber Tomer, testified that he had not made any calculations which included only the percent of blacks qualified to be clerical employees. His figures and testimony assumed that all of the blacks comprising eighteen percent of the county population were capable of performing clerical work. However, statistical comparisons of labor markets must be made with reference to the skills involved. O'Neal cannot assume that all blacks in the county are capable of performing clerical duties in her efforts to prove that blacks as a class have been unlawfully excluded. *See Miller v. Weber,* 577 F.2d 75, 77 (8th Cir. 1978). The district court found that approximately two percent of the blacks in the county were engaged in clerical employment. Riceland's composition of six to eight percent black clerical employees does not, therefore, give rise to an inference of unlawful exclusion.

O'Neal's two witnesses with CRT experience likewise did not aid her attempt to establish a prima facie case. One witness testified that a CRT operator could have a very simple or a very complex job depending upon the job. Both witnesses testified that they were unfamiliar with the Riceland CRT system in its customer service department.

Although O'Neal attempted to portray Madar as a racist who caused her termination, O'Neal admitted on cross-examination that Madar did not make any statement that indicated that she did not want blacks working in her department. O'Neal did not submit testimony from any of her co-workers which would support her charges of discriminatory treatment.

The evidence reveals that in the entire Riceland facility O'Neal received the most training on the CRT machine (seven weeks) and that the next highest amount of training needed was three weeks. Even after that extended period of training, O'Neal's trainer, Couch, did not believe that she was qualified to do the work required on the CRT. Additionally, her co-workers were spending their work time correcting her errors instead of doing their own work. The evidence, taken as a whole, fully supports the district court's findings and conclusions and fails to leave us with "the definite and firm conviction that a mistake has been committed." *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Coleman v. Missouri Pacific Railroad,* 622 F.2d 408, 410 (8th Cir. 1980).

B. *Discriminatory Hiring*

O'Neal argues that the court erred in granting partial summary judgment to Riceland regarding any claims O'Neal might have had for Riceland's racially motivated refusal to hire her. O'Neal relies upon the language of her complaint stating: "plaintiff and others of this class were denied consideration for certain clerical, inspection, supervisory and managerial jobs." O'Neal concedes that reasonable men might have differed on the proper construction of her complaint, but she argues that Riceland had an affirmative obligation to clear up any ambiguity by making a motion for a more definite statement.

The district court concluded that neither the EEOC charge nor the complaint contained any allegations that Riceland wrongfully refused to hire O'Neal and that both documents address events occurring after O'Neal's 1977 hiring. The court further determined that any refusal-to-hire claim based on 42 U.S.C. § 2000e would be

untimely. The court reasoned that even if O'Neal amended her complaint to include such a claim, the three-year statute of limitations would only allow her to make a claim subsequent to 1978 and she was hired in 1977. After reviewing the record, we find no error in the district court's award of partial summary judgment to Riceland.[2]

### C. Interrogatories

Riceland objected to several of the questions in O'Neal's fourth set of interrogatories.[3] After a hearing on O'Neal's motion to compel responses, the trial court sustained a number of Riceland's objections. Several of the interrogatories sought information concerning the size and racial make-up of Riceland's applicant pool. O'Neal argues that such information was necessary as evidence of Riceland's general employment practices and would be relevant evidence of pretext. The district court ruled that Riceland did not need to answer the interrogatories dealing with hiring since the partial grant of summary judgment had previously determined that hiring was not an issue in the case. O'Neal had also requested the Affirmative Action Plans of Riceland as well as any prior citations by governmental agencies that Riceland's employment practices had been racially discriminatory. Riceland had given O'Neal the Affirmative Action Plans in effect during the time of O'Neal's employment and at the time of her discharge. The district court ruled that the Affirmative Action Plans for the thirteen years prior to O'Neal's hiring were not discoverable by O'Neal and that the Affirmative Action Plans previously turned over to O'Neal were all that O'Neal was required to be given. The court further ordered Riceland to produce any. information regarding governmental sanctions or citations for the same period of time and ruled that such information for the thirteen years prior to O'Neal's hiring was not discoverable.

We accord the district court wide discretion in its handling of discovery matters and its decisions will be upheld "unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." *Voegeli v. Lewis*, 568 F.2d 89, 96 (8th Cir. 1977). The district court "must be free to use and control pretrial procedure so to insure the orderly administration of justice." *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 889 (8th Cir. 1978).

The record indicates that the district court attempted to insure that O'Neal had adequate information to pursue her claims while at the same time preventing Riceland from having to expend huge amounts of time and money to produce information which was unnecessary to the litigated issues. There was no abuse of discretion by the trial court in its handling of O'Neal's fourth set of interrogatories.

Affirmed.

---

2. Likewise, O'Neal's argument that the district court erred in not certifying a class action is without merit. O'Neal sought to represent a class of black persons who had been denied employment because of their race. O'Neal's complaint provided an insufficient basis for concluding that the adjudication of her claim of discriminatory firing would require the decision of any common question concerning Riceland's failure to hire more blacks. *See General Tel. Co. v. Falcon*, —— U.S. ——, ——, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).

3. In response to O'Neal's first set of interrogatories, Riceland furnished information regarding the racial composition of its clerical employees for the years 1968–1980. Riceland's response to the second set included the names of black clerical personnel employed since 1974 who were no longer employed by Riceland and the reasons for their separation from employment with Riceland. In addition, Riceland produced its Equal Employment Opportunity EEO–1 reports for the years 1969–1980. O'Neal also took a lengthy deposition of Riceland's personnel director.