Charles A. SELBY, Plaintiff,

v.

PEPSICO, INC., Defendant.

William L. NESBIT, Plaintiff,

v.

PEPSICO, INC., Defendant.

Nos. C–89–3091–CAL, C–89–3092–CAL.

United States District Court,
N.D. California.

Oct. 16, 1991.

Alexander H. Singleton, Lynne L. Bentley, Law Offices of Alexander H. Singleton, San Jose, Cal., John A. McGuinn, McGuinn Hillsman & Palefsky, San Francisco, Cal., for plaintiff.

Robert T. Zielinski, Richard E. Lieberman, Ross & Hardies, Chicago, Ill., Robert M. Cassel, San Francisco, Cal., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

LEGGE, District Judge.

These cases are presently before the court on defendant's motions for summary judgment. After discovery was concluded, defendant filed these motions. At the oral argument, this court vacated the trial date and gave plaintiffs additional time to oppose the summary judgment motions. Additional oppositions were filed. The motions were then submitted to this court for decision. Because the factual and legal issues in these cases are substantially similar, both are addressed in this order. The court has reviewed the moving and opposing papers, the record of the case, and the applicable authorities, and concludes that there are no genuine issues of material fact on the matters discussed below, and that summary judgment should be entered in favor of defendant in both actions.

### I.

Plaintiffs Nesbit and Selby allege that defendant Pepsico: (1) breached their em-

ployment agreements and (2) discharged plaintiffs because of their age in violation of California Government Code § 12900, *et seq.*[1] Plaintiff Nesbit also asserts a claim for discrimination based on his alleged physical disability.

### II.

Plaintiffs were employees of New Century Beverage Co. ("NCB"), a soft drink bottler. On December 29, 1986 Pepsico acquired NCB and merged NCB's operations into its own bottling operations. At the time of acquisition, plaintiff Selby (age 59) was NCB's Assistant Operations Manager and plaintiff Nesbit (age 49) was a Chain Account Manager. Pepsico terminated plaintiffs and seventeen other salaried employees on May 6, 1987, as part of an alleged "reduction in force" ("RIF") and general restructuring of NCB's operations. Of the nineteen employees terminated, ten were younger and nine were older than forty years of age.

Prior to Pepsico's acquisition of NCB, 262 salaried employees worked at NCB. By December 1987, six months after the RIF began, Pepsico employed 233 salaried workers, an approximate 10% reduction.[2] In December 1988, one year later, three salaried positions had been added, for a total of 236 employees. Thus, a reduction of approximately 10% of the salaried work force was made and maintained over an eighteen month period.

### III.

Plaintiffs allege that their discharge resulted from discrimination on the basis of their age, in violation of California's Fair Employment and Housing Act ("FEHA"). Cal.Govt.Code § 12900 *et seq.* This court, exercising its diversity jurisdiction, applies the substantive law of the state. However, the California courts have noted that:

Because the language and objectives of California's Fair Employment and Hous-

---

**1.** Both plaintiffs originally asserted claims for intentional infliction of emotional distress, but requested this court to dismiss those claims in their joint pretrial statements. Those claims are therefore dismissed.

**2.** Defendant also contends that numerous vacant positions were also eliminated during the RIF.

ing Act as it relates to age discrimination closely parallel the language and objectives of the federal Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*), we refer to federal decisions where appropriate.

*Stephens v. Coldwell Banker Commercial Group, Inc.*, 245 Cal.Rptr. 606, 199 Cal. App.3d 1394, 1399 (1988) (citation omitted). In addition, *Stephens* noted that "precedential decisions of the Fair Employment and Housing Commission dealing with age discrimination, which 'serve as precedent' in interpreting the state act, similarly rely upon cases brought under the federal act." *Id.* (citations omitted). Thus, this court may look to cases addressing both the state and federal statutes for guidance in applying state law.

■ California courts have adopted the U.S. Supreme Court's approach in discrimination cases with respect to the presumptions and the shifting of burdens, as set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980); *Sischo–Nownejad v. Merced Comm. College District*, 934 F.2d 1104 (9th Cir.1991). To establish a *prima facie* case of age discrimination, and thereby shift the burden of proof to defendant, as in Title VII cases, plaintiffs must produce enough evidence to permit the trier of fact to infer the fact of age discrimination. *Texas*, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7.

■ A plaintiff alleging age discrimination may proceed under either of two theories of liability: disparate treatment or disparate impact. *Rose v. Wells Fargo*, 902 F.2d 1417 (9th Cir.1990). Plaintiffs' claims fall within the disparate treatment theory. Proof of disparate treatment requires a showing that the employer treated some people less favorably than others because of their age. An employee may establish a *prima facie* case of age discrimination under the disparate treatment theory by showing that he: (1) was a member

of the protected class, age 40–70; (2) was performing his job in a satisfactory manner; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Rose*, 902 F.2d at 1421.[3] The failure to prove the fourth element is not necessarily fatal if the discharge results from a general reduction in the work force due to business conditions. *Id.* However, in RIF cases, plaintiff must show "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Id.* And:

> [i]n a reduction-in-force case, there is no adverse inference to be drawn from an employee's discharge if his position and duties are completely eliminated ... If [the discharged employee] cannot show that [his employer] had some continuing need for his skills and services in that his various duties were still being performed, then the basis of his claim collapses.

*Id.* (citing *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1270 (8th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987)). Defendant argues that plaintiffs have failed to meet the fourth element of the test by establishing that they were "replaced."

■ Establishment of a *prima facie* case operates to shift the burden to defendant to produce some evidence that it had legitimate, nondiscriminatory reasons for the employment decision. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Defendant contends that plaintiffs' positions were eliminated as part of the RIF and that plaintiffs' former duties were reassigned to those employees who were retained.

■ If defendant carries its burden of production, plaintiffs must prove by a preponderance of all the evidence in the case that the legitimate reasons offered by defendant were a pretext for discrimination.

---

**3.** Both California and U.S. law recognize that the standard for establishing a *prima facie* case will necessarily vary according to the facts and theories presented in each case. *Burdine*, 450

U.S. at 253–54 n. 6, 101 S.Ct. at 1093–94 n. 6; *Mixon v. Fair Employment & Housing Com.*, 192 Cal.App.3d 1306, 1317, 237 Cal.Rptr. 884 (1987).

*Id.* The ultimate burden of persuading the trier of fact remains at all times with plaintiffs. *Id.* Plaintiffs raise the issue of "pretext" to counter defendant's RIF defense. Assuming plaintiffs make a *prima facie* case of discrimination, they must also offer "specific and significantly probative evidence" that defendant's stated reasons (RIF) are merely a pretext for unlawful discrimination to avoid summary judgment. *Schuler v. Chronicle Broadcasting Co.,* 793 F.2d 1010, 1011 (9th Cir.1986).

With those legal standards in mind, this court has examined the record.

## IV.

Plaintiff Nesbit was a Chain Account Manager ("CAM") before Pepsico terminated his employment in May 1987. Of the seven CAMs employed by NCB, four were over 40, and three were under 40. Five were retained by Pepsico. Two CAM positions were eliminated, and the accounts formerly handled by those individuals were distributed among the five remaining employees in the department. The two employees fired were plaintiff Nesbit, age 49 and Cox, age 38. Four of the five employees retained were older than Cox, but younger than Nesbit.

■ Nesbit argues that he was replaced by a younger worker. However, his position was eliminated and his work reassigned to the retained employees. He argues that several younger persons were subsequently hired by Pepsico, and therefore he was "replaced" by a younger employee at a later time. The subsequent hires, however, occurred at a significantly later date. And those new employees were hired as replacements for CAMs who had originally been retained, but voluntarily left Pepsico later. They cannot be said to have "replaced" Nesbit. *See Rose,* 902 F.2d at 1422. No net growth in the number of CAMs resulted from the subsequent hires. Thus, Nesbit cannot establish that he was replaced by a younger employee. His position was eliminated as part of the actual RIF of CAMs retained by Pepsico after the NCB acquisition.

■ Plaintiff might nevertheless establish a *prima facie* case by showing "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Id.* at 1421. However, "[i]f [the discharged employee] cannot show that [his employer] had some continuing need for his skills and services in that his various duties were still being performed, then the basis of his claim collapses." *Id.* Although Nesbit's position was eliminated, it cannot be said that Pepsico no longer had a need for his skills and services. Had the entire CAM department been eliminated or absorbed into existing Pepsico operations, this defense would be available and persuasive. However, Pepsico retained five of the CAMs, thereby establishing a continuing need for the types of service formerly provided by Nesbit.

Although plaintiff's claim does not therefore collapse, he must still show that his discharge occurred under circumstances that give rise to an inference of age discrimination in order to establish a *prima facie* case. *Id.* at 1421. Direct, circumstantial and statistical evidence may be used.

Plaintiff's statistical evidence does not meet the burden of a *prima facie* case. "For the plaintiffs to show a prima facie case of disparate treatment based solely on statistics, they must show a stark pattern of discrimination unexplainable on grounds other than age." *Rose,* 902 F.2d at 1423 (citing *Palmer v. United States,* 794 F.2d 534, 539 (9th Cir.1986)). Plaintiff argues that because younger employees were retained for the five CAM positions, an inference of discriminatory intent is established. The facts are that one employee older than 40 and one younger than 40 were fired when two of the seven CAM positions were eliminated. Mr. Cox, the other CAM terminated at the same time as plaintiff, was 38 years old. Only Ms. Snow, age 31, was younger than Cox. Plaintiff must therefore argue that an inference of discriminatory intent arises merely because the oldest employee was not retained. Of the seven CAMs formerly employed by Pepsico, four were older than 40 and three were young-

er.[4] One employee from each age group was discharged. The fact that plaintiff was discharged and younger employees were retained therefore does not in itself establish discriminatory intent sufficient to state a *prima facie* case.

Plaintiff also argues that defendant's subsequent hires in the post-RIF period included people who were mainly in their twenties and thirties. This statistical information has been held to be irrelevant by several courts. *Simpson v. Midland Ross Corp.*, 823 F.2d 937, 943–44 (6th Cir. 1987); *O'Neal v. Riceland Foods*, 684 F.2d 577, 581 (8th Cir.1982). The relevant comparison is between those terminated and those employed by defendant at that time. The fact that subsequent hires were younger than the terminated employees merely reflects a younger available work force, and is not evidence of discriminatory intent.

Plaintiff next argues that a *prima facie* case may be established through indirect evidence without providing any evidence that the employer's motivation was based on age. Plaintiff cites *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 18 (7th Cir.1987) for the proposition that "a showing that the proffered justification is pretextual may itself be equivalent to a finding that the employer intentionally discriminated." *Id.* at 18. *Graefenhain* does not support that position. The Seventh Circuit was not addressing the plaintiff's burden of establishing a *prima facie* case, but rather the ultimate burden of proof. Once a *prima facie* case is established, a plaintiff may prevail without presenting actual evidence of discrimination:

> if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence from the inferences produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent.

**4.** In addition, ten of the nineteen employees terminated in the restructuring of NCB were

*Id.* at 18. Plaintiff's argument is actually an attempt to establish a *prima facie* case by attacking the employer's justification for termination. The burden does not shift to the employer to produce evidence of justification until *after* plaintiff establishes a *prima facie* case. *Watson*, 487 U.S. 977, 108 S.Ct. 2777. Plaintiffs suggested approach does not comport with *Graefenhain* or the law in this circuit. *See Rose*, 902 F.2d at 1421.

Plaintiff argues that defendant's stated reason for his discharge (RIF) was pretextual. That argument, discussed above, is not properly considered in determining whether plaintiff has met his initial burden. However, even were this court to consider plaintiff's arguments in that context, plaintiff has not established that the business reasons for reorganizing and reducing the size of NCB's former staff were pretextual. The number of CAMs in the department was reduced from seven to five, and remained at five for over a year.

Plaintiff argues that defendant terminated his employment even though it knew that attrition would necessitate *future* hiring. This argument essentially states that Pepsico should have continued to employ plaintiff indefinitely until one of the other CAMs quit. Plaintiff cites no law to support this position. Plaintiff has not shown that Pepsico had specific knowledge that certain CAMs would be leaving within a reasonable period of time. No reasonable inference of age discrimination arises from defendant's decision not to continue to employ additional workers in order to fill vacancies that may or may not occur in the future.

Plaintiff argues that defendant's failure to rehire plaintiff when a position later became available creates an inference of pretext and discriminatory intent. Two months after the RIF, one CAM voluntarily left Pepsico, and was replaced by a 39 year old. Plaintiff's argument is answered by *Rose*. The Ninth Circuit stated that "an

younger than age 40.

inference of discrimination is raised where the terminated employee 'can show that *others not in the protected class were treated more favorably.*'" 902 F.2d at 1422–23 (emphasis in original) (citation omitted). In this case, plaintiff has not shown that any other terminated employees in the younger age group were rehired. In fact, defendant replaced the fifth CAM with a 39 year old, even though Mr. Cox, age 38, had recently been terminated.[5]

■■■■■ Plaintiff attempts to establish an inference of discrimination from a magazine article quoting Rodney King, Pepsico's Senior Vice President for Human Resources.[6] Defendant moved to strike the evidence as inadmissible hearsay.[7] A magazine is hearsay under Federal Rule of Evidence 801. Plaintiff argues that the statement is nonetheless admissible as an admission of a party's agent under Fed. R.Evid. 801(d)(2)(D). As the proponent of this evidence, plaintiff must demonstrate it is "a statement by [Pepsico's] agent or servant concerning a matter within the scope of the agency or employment...." *OKI America, Inc. v. Microtech Inter., Inc.*, 872 F.2d 312, 314 (9th Cir.1989). Plaintiff has not established King's capacity, that he was acting within the scope of his employment when the statement was made, or that his capacity in any way affected those who made the decision to terminate plaintiff. The court can not presume that a foundation for the evidence exists when plaintiff has not established the necessary foundation.

■■■■■ Plaintiff also argues that the statement is admissible as evidence of defendant's discriminatory attitude, rather than for the truth of the matter asserted, citing *Hopkins v. Price Waterhouse*, 490 U.S. 228, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989). This argument falls within the domain of Rule 801(c), evidence offered solely to prove that a statement was made.

Plaintiff has produced no evidence, however, to connect Mr. King or his statement to anyone involved in the decision to terminate plaintiff. This distinguishes this case from those cited by plaintiff, where the discriminatory statements were made by individuals involved in the decision-making process. It is undisputed that Mr. King did not make the decision to terminate plaintiff. Thus, "plaintiff has failed to establish a nexus between the alleged [discriminatory statement] and the decision to terminate." *DeHorney v. Bank of America Nat. Trust and Sav.*, 879 F.2d 459, 468 (9th Cir.1989). The statement would at best constitute a "stray remark" of arguably discriminatory character. Such remarks do not raise an inference of discrimination. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir.1990).

■■■■■ Plaintiff argues that the fact Heylinger, a younger and less qualified employee, was retained by Pepsico gives rise to an inference of discriminatory intent. There is no dispute in the record, however, that performance rating was not a factor in the decision. The decision to terminate plaintiff was allegedly based on the characteristics of the accounts serviced by each CAM and the risk, or lack thereof, in consolidating account assignments. Heylinger, at age 42, was also in the "protected" age group. His retention does not reflect a discriminatory intent based on age. Indeed, had defendant sought to discriminate on the basis of age, it would have discharged Heylinger at age 42, rather than Mr. Cox at age 38. Plaintiff has failed to show that the retention of Heylinger infers any discriminatory animus.

■■■■■ Plaintiff contends that Nosek, the new Business Development Manager, interviewed all CAM's except for plaintiff on a trip to Northern California. Nosek testified that he was unable to meet with plain-

---

**5.** Plaintiff attempts to dispute Pepsico's stated "no rehire" policy with an excerpt from a provision in an ERISA plan. This evidence is not relevant to the practice of no rehire, which was followed in this RIF by defendant.

**6.** The statement reads: "We don't want unpromotable fifty-year-olds around. They become bitter and frustrated and are better off leaving."

**7.** Plaintiff responded to defendant's motion to strike by submitting a declaration from the author of the article.

tiff because the other meetings ran overtime, and he had to catch a plane flight; but he held a meeting with plaintiff by telephone at a later date. This does not give rise to an inference of age discrimination.

Plaintiff proffers a statement made by Steve Lawrence at a personnel meeting. Plaintiff asked Lawrence whether employees should only wear blue and grey suits. At the end of his answer Lawrence added that, "Pepsi didn't necessarily like grey hair." Plaintiff has grey hair. Both Lawrence and plaintiff testified at their depositions that those in attendance generally laughed. In context, this statement must be viewed as a "stray remark." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir.1990). It does not create a triable issue of fact of intent to discriminate. And plaintiffs have not shown that Lawrence participated in any way in the decision to terminate plaintiffs.

 Finally, plaintiff argues that a severance offer, made by Pepsico contingent upon plaintiff signing a waiver and release of rights under age discrimination laws, establishes an inference of discriminatory intent. In *Mundy v. Household Finance Corp.*, 885 F.2d 542, 547 (9th Cir.1989), the Ninth Circuit stated that "the mere offer of money in exchange for a release of all claims cannot in itself raise an inference that [defendant's] articulated reasons for discharging [plaintiff] are pretext." All salaried employees released in the RIF by defendant, regardless of age, were offered the same severance conditioned upon signing the waiver.

In sum, plaintiff has raised numerous arguments in an attempt to establish a *prima facie* case of discriminatory intent. Most of the arguments attack defendant's RIF defense as pretext, and are not properly considered in determining whether plaintiff has demonstrated a *prima facie* case. Yet, even when considered in that context, they do not demonstrate an inference of discriminatory intent.

## V.

Plaintiff Selby[8] was, at the time of the acquisition of NCB by Pepsico, one of four members of the Operations Department. Three members of the department were over age forty, the oldest being 62 years old. Plaintiff was 59 when discharged.

 Plaintiff attempts to meet the fourth element of the disparate treatment test by alleging that he was replaced by a younger employee, John Edeleanu. There is not sufficient factual support for this claim. Rather, the record demonstrates that upon Selby's departure, those of his tasks which were not eliminated were divided among the remaining members of the department. The fact the Edeleanu and others may have assumed some of his former duties does not establish a *prima facie* case of age discrimination through "replacement" of older with younger employees. In fact Edeleanu replaced Selby's boss' boss, Chet Grywczynski.

 Defendant's reason for terminating Selby was that his job was effectively eliminated, because his job functions were duplicative of those performed elsewhere in the corporation. Specifically, equipment purchasing, one of Selby's employment tasks, was transferred from NCB to Pepsico's New York offices.

Plaintiff argues that Pepsico's reason for his termination was pretextual, and that this evidence is appropriately considered in determining whether a *prima facie* case has been established. As noted above, the court does not agree with that argument. Even considering this evidence, however, plaintiff has not raised a *prima facie* case of discrimination.

Plaintiff was not replaced, but rather his position was eliminated. It is uncontested that some of plaintiff's prior tasks were rendered duplicative after the acquisition and were eliminated. The remaining tasks were divided among existing employees or transferred to New York. This does not

8. Plaintiff Selby raises many of the same arguments as plaintiff Nesbit. The court will not repeat the reasoning addressing these arguments. Only new arguments raised by Selby are addressed in this section.

create an issue of pretext, nor does it establish an issue of fact of discriminatory intent.

## VI.

Plaintiffs argue that there is a factual dispute on the issue of whether implied-in-fact contracts existed, limiting defendant's right to terminate them to instances of "good cause." Plaintiffs offer the statement of NCB Vice-president Campodonico that it was "common knowledge" or "practice" that employees were only terminated for good cause. This testimony may establish an issue of fact as to the existence of an implied-in-fact contract. However, that issue is not material to plaintiffs' termination in this case.

Assuming that implied-in-fact contracts did exist, they would serve only to limit termination to cases where "good cause" existed. A decision to reduce the size of a work force constitutes good cause. *See e.g., Gianaculas v. Trans World Airlines, Inc.,* 761 F.2d 1391, 1395 (9th Cir.1985). Pepsico did in fact reduce the work force. Plaintiffs have not established that the reduction was a pretext for age discrimination.

## VII.

Plaintiff Nesbit also raises the claim that he was terminated because of a handicap. Nesbit suffered a heart attack in 1981, but was considered to be fully recovered at the time of the acquisition in December 1986. Because Nesbit did not suffer from a "physical condition" at the time of his discharge, his prior heart attack is not a handicap under California law, because it was not "disabling." *American National Ins. Co. v. Fair Employment & Housing Com.,* 32 Cal.3d 603, 608, 186 Cal.Rptr. 345, 651 P.2d 1151 (1982). Nesbit has offered no evidence that the earlier heart attack was considered by defendant in the decision to terminate his employment.

IT IS SO ORDERED.