[Nos. A080976, A081325, A081539, A084814, A084822. First Dist., Div. One. Feb. 9, 2000.]

CAMILLE BEGNAL et al., Plaintiffs and Respondents, v.
CANFIELD & ASSOCIATES, INC., Defendant and Appellant.

[No. A082259. First Dist., Div. One. Feb. 9, 2000.]

JEANNIE McKENZIE, Plaintiff and Appellant, v.
CANFIELD & ASSOCIATES, INC., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 2 of the Facts and parts I, II and III of Canfield's Appeal.

## COUNSEL

Righetti Law Firm, Edward J. Wynne, Matthew Righetti; and Ellen Lake for Plaintiff and Appellant and for Plaintiffs and Respondents.

Oppenheimer, Wolff & Donnelly, Paul C. Nyquist and Kevin W. Kirsh for Defendant and Appellant and for Defendant and Respondent.

## OPINION

**STEIN, J.**—Camille Bengal, Connie Ebey, Mary Ann Suerth and Jeannie McKenzie sued their former employer, Canfield & Associates, Inc., alleging their employment was terminated based upon their age in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). The jury found that Canfield had terminated all four plaintiffs based upon their age, but the court granted Canfield's motion for judgment notwithstanding the verdict with respect to McKenzie.

Canfield appeals the judgment in favor of Begnal, Ebey and Suerth.[1] McKenzie appeals the judgment in Canfield's favor, based upon the order granting Canfield's motion for judgment notwithstanding the verdict. We

[1]Canfield also filed an appeal from a postjudgment order awarding attorneys fees to these plaintiffs. Canfield seeks reversal of the attorneys fees order only in the event that the court reverses the judgment in favor of one or more of these plaintiffs.

shall affirm the judgment with respect to Begnal, Ebey, and Suerth. We shall also reverse the judgment in Canfield's favor with respect to McKenzie, and remand with directions to enter judgment in accordance with the jury's verdict.

FACTS[2]

1. *Canfield Takes Over Collection and Registration Functions at Valley Memorial Hospital.*

Prior to October 1995, Camille Bengal, Connie Ebey, and Mary Ann Suerth had been employed by Valley Memorial Hospital (Hospital) in the accounting department. Their responsibilities included sending out bills and collecting patient accounts. McKenzie had been employed for 17 years as an admitting clerk. Plaintiffs met or exceeded the performance expectations set by the Hospital.

In October 1995, the Hospital retained Canfield, a business that specializes in handling collection and registration functions of hospitals, to formulate and implement a plan to rescue the Hospital from a serious financial crisis. The Hospital informed each of the plaintiffs along with other employees in the admitting and business offices, that their employment was terminated, but that, upon application they would be rehired by Canfield.

Dianne Fenton was the Canfield project manager at the Hospital. As promised, Canfield hired Suerth, Begnal and Ebey as patient account executives. Their primary responsibility was to collect receivables owed to the Hospital. They handled 100 percent of the commercial and managed care accounts, which constituted the majority of uncollected accounts. McKenzie was also hired as an admitting clerk.

Canfield terminated the employment of all the plaintiffs within the next six months.

2. *Canfield's Reasons for Terminating the Employment of Suerth, Begnal and Ebey**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]This court has reviewed the entire record, which discloses that Canfield presented a tenacious defense, offering conflicting evidence on nearly every factual issue. As the reviewing court, we must resolve all conflicts, and draw all inferences in favor of the judgment. (*Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970 [191 Cal.Rptr. 415].) We therefore summarize the evidence supporting the judgment, and address the conflicting evidence only as relevant to our analysis of Canfield's contentions on appeal.

*See footnote, *ante*, page 66.

### 3. Reasons for Terminating Jeannie McKenzie

On November 8, 1995, one month after she became a Canfield employee McKenzie received a warning from Dianne Fenton charging that on November 2 and 7, McKenzie left her department without her supervisor's approval. McKenzie explained her absences on both dates. When Fenton informed her that she nevertheless was not allowed to combine her lunch and break, a practice that Valley Hospital had allowed, McKenzie apologized and agreed to dock her time card.

On November 15, 1995, Canfield changed McKenzie's job title to "financial counselor" and assigned her new responsibilities. Her duties included collection of patient payments, verifying insurance coverage, and obtaining authorization from insurance companies for admission, and collecting payments not covered by insurance. She was also assigned to sit in the cashier's window, balance the cash drawer, and answer all questions from patients and visitors.

On November 30, McKenzie was given a final warning for failing to obtain insurance authorization for four patients scheduled to be admitted shortly after the Thanksgiving weekend. McKenzie, after doing some investigation, discovered that she had preverified insurance coverage for one of the patients, and another had been admitted after she left for work for the day. She also testified that her supervisor asked her to assist with insurance verification of patients that had already been admitted over Thanksgiving weekend, and the workload was so overwhelming that it could not all be accomplished. She asked for a review of her job description, more training for her new duties, and an adequate workspace, but did not receive any response to her request.

Despite the warnings, on February 8, 1996, McKenzie's supervisor rated her performance as "good" or "very good" in all categories.

Yet, on February 16, 1996, Dianne Fenton informed McKenzie that her employment was terminated. In addition to the November charges of "job abandonment" Fenton cited failure to perform newly imposed duties regarding insurance verification of unbilled accounts. McKenzie testified that she did perform these duties, reducing in only three days the number of unverified accounts from 20 to 8. Fenton also cited a complaint that McKenzie had made a racially discriminatory comment. Fenton refused to tell McKenzie what the racist remark was. Barbara Hoyt testified that she, not McKenzie, had made the remark, although she did not intend it as a racist remark.

### 4. *Evidence of Plaintiffs' Ages and Ages of Replacements*

Suerth was 59, Ebey was 64, Begnal was 53, and McKenzie was 40. Although no specific evidence was presented as to who replaced each plaintiff, a former Canfield employee testified that the new hires after plaintiffs were terminated were younger than Jeannie McKenzie, who was 40.

Fenton testified that Jeannie McKenzie's duties were assigned to Mary Lou Leonard, an existing Canfield employee, who was older than McKenzie. Mary Lou Leonard had been a supervisor. Although Fenton described the move as a "lateral transfer," she testified that Leonard did not continue to perform supervisory tasks, and she resigned one year later.

### 5. *Expert Testimony*

William Lepowsky, plaintiffs' statistical expert, determined that all but one of the seven Canfield employees terminated in 1995-1996 were 40 or older. The average age of terminated employees was 51.02 years, whereas the average age of retained employees was 39.2 years. Lepowsky found a statistically significant higher discharge rate for older employees. One method showed that there was only a 2 percent probability the higher discharge rate for older employees resulted by chance, and another showed a 1.8 percent likelihood. Lepowsky concluded that age was a factor in the terminations.

### 6. *Dave Canfield's Statement*

Jessie Ann Shaddix replaced Dianne Fenton in April 1996. Over Canfield's objection, she testified that in May 1996, Dave Canfield, president of Canfield, told her that in marketing positions he wanted, "someone that's young, but not too young, someone that wears makeup, but not gaudy makeup, someone that dresses well but doesn't overdress."

### 7. *The Jury Verdict*

The jury rendered its verdict, finding that Canfield discriminated against each plaintiff "because of her age." The jury awarded economic damages in the amount of $24,717 to Suerth, $18,934 to Ebey, and $9,564 to Begnal, and noneconomic damages in the amount of $10,000 to each. It awarded McKenzie $20,156 in economic damages, and $5,000 in noneconomic damages. At the bottom of the special verdict form, the jury stated: "We request that the charge of discrimination be removed from Jeannie McKenzie's employment record."

Canfield moved for judgment notwithstanding the verdict as to all plaintiffs. With respect to McKenzie, Canfield argued, that it was entitled to judgment notwithstanding the verdict because she was replaced by an older person and therefore could not, as a matter of law, have been terminated based upon her age. The court denied the motion as to Suerth, Begnal, and Ebey, but granted it as to McKenzie. It filed an amended judgment on December 17, 1999.

CANFIELD'S APPEAL*

I.-III.

. . . . . . . . . . . . . . . . . . . . . . . . . . .

MCKENZIE'S APPEAL

 McKenzie contends that the trial court erred by granting Canfield's motion for judgment notwithstanding the verdict. She contends that evidence that she was replaced by a person older than she was, and also in the protected class, did not preclude the jury from inferring that she was terminated based upon her age, and she presented other substantial evidence of discrimination, which supported the jury verdict. We agree, and shall reverse the judgment, and remand with directions to enter a new judgment in McKenzie's favor in accordance with the jury's verdict.[6]

 The trial court may grant judgment notwithstanding the verdict only if the verdict is not supported by substantial evidence. The court may not weigh evidence, draw inferences contrary to the verdict, or assess the credibility of witnesses. The court must deny the motion if there is any substantial evidence to support the verdict. (*Tan Jay Internat., Ltd. v. Canadian Indemnity Co.* (1988) 198 Cal.App.3d 695, 703 [243 Cal.Rptr. 907]; *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 877-878 [151 Cal.Rptr. 285, 587 P.2d 1098].) This court therefore may uphold the order granting judgment notwithstanding the verdict, and affirm the judgment based thereon only if, reviewing all the evidence in the light most favorable to McKenzie, resolving all conflicts, and drawing all inferences in her favor, and deferring to the implicit credibility determinations of the trier of fact, there was no substantial evidence to support the jury's verdict in her favor. "If the evidence is conflicting or if several reasonable inferences may

---

*See footnote, *ante,* page 66.

[6]In light of this disposition, it is unnecessary to address McKenzie's additional contention that by filing a notice of appeal, Canfield deprived the court of jurisdiction to grant the motion for judgment notwithstanding the verdict.

be drawn," the court erred in granting the motion and we must reverse. (*Clemmer v. Hartford Insurance Co.*, *supra*, 22 Cal.3d 865, 877.)

 In support of the trial court's order granting judgment notwithstanding the verdict, Canfield argues that McKenzie failed to establish a prima facie case of age discrimination because McKenzie was replaced with Mary Lou Leonard, who was older than McKenzie. The question whether the plaintiff established a prima facie case, is not properly before this court, because the case proceeded to a jury verdict.[7] (*U.S. Postal Service Bd. of Govs.* v. *Aikens* (1983) 460 U.S. 711, 713-715 [103 S.Ct. 1478, 1480-1481, 75 L.Ed.2d 1368].) Instead, the relevant question when reviewing the judgment notwithstanding the verdict is whether the trial court correctly concluded that no substantial evidence supported the jury's conclusion that Canfield terminated McKenzie based upon her age.

The trial court was apparently persuaded by Canfield's argument that the evidence that McKenzie was replaced by an older worker, also in the protected class, *precluded*, as a matter of law, the inference that she was terminated based upon her age, and therefore granted Canfield's motion for judgment notwithstanding the verdict.[8] Canfield relies upon some federal and California cases that state a plaintiff may establish a prima facie case by submitting evidence that, among other things, he or she was replaced by a substantially younger person. (See, e.g., *Mundy v. Household Finance Corp.* (9th Cir. 1989) 885 F.2d 542; *Selby v. Pepsico, Inc.* (N.D.Cal. 1991) 784 F.Supp. 750, affd. *sub nom. Nesbit v. Pepsico, Inc.* (9th Cir. 1993) 994 F.2d 703; *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d 912, 917; *Wallis v. J.R. Simplot Co.* (9th Cir. 1994) 26 F.3d 885, 891; *Rose v. Wells Fargo & Co.* (9th Cir. 1990) 902 F.2d 1417, 1421; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 195-200, 206 [48 Cal.Rptr.2d 448]; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003 [67 Cal.Rptr.2d 483].) In these cases the facts were either that the plaintiff was replaced by a younger employee, or as part of a reduction in force, the plaintiff's duties were assigned to someone younger. Therefore, these courts were not faced with the question whether a plaintiff who is replaced by an older person in the protected class can nevertheless prove that he or she was discriminated against based upon age by introducing other direct or circumstantial evidence of age discrimination. The cases Canfield cites only support the proposition that, if a plaintiff is relying upon

[7]Therefore, we do not decide the question whether a plaintiff who is replaced by an older person may nevertheless establish a prima facie case of age discrimination.

[8]Although the trial court did not state its reasons for granting the motion for judgment notwithstanding the verdict, during the hearing on the motion it repeatedly asked McKenzie's counsel to explain how an employee who is replaced by an older person can nevertheless prove age discrimination.

the *McDonnell Douglas*[9] burden-shifting framework, to establish a prima facie case, evidence that an employee is replaced by a substantially younger person, together with certain other facts not relevant to our analysis, *permits* the inference that the termination was based upon age, which may be rebutted by evidence of non-age-related reasons for the termination.[10]

It is quite another proposition to hold that evidence that an employee is replaced by an older person within the protected class *precludes* any inference that an employee is terminated based upon age, even if the plaintiff presents other evidence to support an inference of discrimination. As explained in a very recent decision of the Eleventh Circuit Court of Appeals, *Wright v. Southland Corp.* (11th Cir. 1999) 187 F.3d 1287, reversing a summary judgment for the employer in an age discrimination case: "[I]t is both logically and practically possible for an employer to discriminate against a person on the basis of a protected personal characteristic despite the fact that the person is replaced by someone with the same characteristic." (*Id.* at p. 1300.) As an example, the court offered: "[I]magine a situation in which a racist personnel manger for a corporation fires an employee because he is African American. Shortly thereafter, the racist personnel manager is replaced, and the previously terminated employee is replaced by another African American. Under these circumstances, the first individual would have been a victim of illegal discrimination, despite the fact that his replacement was of the same race." (*Id.* at p. 1292.) As this example illustrates, to hold that evidence that an employee is replaced by an older person conclusively establishes the absence of age discrimination would provide an employer who had actually discriminated based upon age with an absolute defense. Instead, the court held that evidence the plaintiff was replaced by a person six months older was "not conclusive." (*Id.* at p. 1305.) The court explained that although this evidence "tend[ed] to prove" that the plaintiff was not fired due to his age, (*id.* at pp. 1304-1305), a triable issue of fact existed because the plaintiff also submitted evidence that three months before he was fired, a regional market manager and field consultant stated to other employees that plaintiff was getting "too old," and was too old to understand the new computer programs. (*Ibid.*)

[9]*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668].

[10]Canfield also asserts that the decision of the United States Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.* (1996) 517 U.S. 308 [116 S.Ct. 1307, 134 L.Ed.2d 433], supports its contention that replacement by an older person within the protected class conclusively precludes any inference of age discrimination. The court in *O'Connor*, simply held that a plaintiff need not prove his or her replacement is outside the protected class, and that evidence that the replacement is substantially younger is sufficient to support a prima facie case. (*Id.* at pp. 311-312 [116 S.Ct. at pp. 1309-1310].) As with the other cases Canfield cites, the court did not hold that this was the *only* way to establish a prima facie case, and did not address the question whether evidence that the employee was replaced by an *older* person, within the protected class would preclude any inference of age discrimination once the issue is submitted to the trier of fact.

Similarly in *Greene v. Safeway Stores, Inc.* (10th Cir. 1996) 98 F.3d 554, the court reversed a directed verdict in favor of the employer, holding that the plaintiff had presented sufficient evidence that his employment was terminated based upon his age, despite the fact that he was replaced by a person named King, who was older than the plaintiff, and also in the protected class. The plaintiff presented evidence that in 12 months following the appointment of a new president and chief executive officer, eight top level executives who were over the age of 50 were replaced by younger persons (*id.* at pp. 560-561), and the new chief executive officer told the plaintiff when he was discharged that he "didn't fit in with the new culture." (*Id.* at p. 561.) The court explained that "these evidentiary showings altogether raised a fact question for the jury which could justify the trier of fact in disregarding King's status as an older replacement and in nevertheless finding age discrimination." (*Id.* at p. 562.) The court observed that other decisions had also held that "replacement by an older employee has been viewed as not fatal to an age discrimination claim." (*Ibid.*; citing *Loeb v. Textron, Inc.* (1979) 600 F.2d 1003, 1013, fn. 9; *Alphin v. Sears, Roebuck & Co.* (11th Cir. 1991) 940 F.2d 1497, 1500-1501; see also *Pitre v. Western Elec. Co., Inc.* (10th Cir. 1988) 843 F.2d 1262, 1272 [noting that fact that member of the protected class was hired or promoted in place of a title VII plaintiff, "has repeatedly been held insufficient to insulate that employer from liability"]; *Douglas v. Anderson* (9th Cir. 1981) 656 F.2d 528, 533 [holding that replacement by a older person "will not necessarily foreclose prima facie proof if other direct or circumstantial evidence supports an inference of discrimination"]; *Walther v. Lone Star Gas Co.* (5th Cir. 1992) 952 F.2d 119, 123.)

Although no California decisions have specifically addressed the question whether under the FEHA evidence that a plaintiff is replaced by an older person also in the protected class conclusively precludes an inference of age discrimination, in *Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735 [52 Cal.Rptr.2d 620], the court, in the context of a race discrimination claim, explained that although "proof regarding 'similarly situated' employees outside the protected class . . . [¶] . . . may be one way of raising an inference of intentional discrimination, *it is not the only way.* . . . [¶] To state that a plaintiff may never establish a prima facie case if the plaintiff fails to produce evidence that similarly situated employees outside the protected class were promoted, restricts unfairly the circumstances from which discrimination may be inferred." (*Id.* at p. 1755.) The court concluded: "Although the characteristics of the employee replacing a discharged or demoted employee are certainly relevant in evaluating an employer's motive for an employment decision, we believe those characteristics *go to the weight of the evidence* rather than its *legal sufficiency.*" (*Id.* at

p. 1756, italics added.) This analysis is entirely consistent with the federal decisions we have already discussed. (See also *Hersant v. Department of Social Services, supra,* 57 Cal.App.4th 997, 1002-1003, fn. 3 [court observed, in dicta, although plaintiff established a prima facie case by showing among other things that he or she was replaced by a significantly younger person, evidence of replacement by a younger person may not be necessary if the employee offers other evidence "such that a reasonable inference of age discrimination arises"].)[11]

Depending upon the other evidence presented at trial the jury may draw inferences, other than the absence of age discrimination, from evidence that the plaintiff was replaced by an older person. For example, the jury may infer that the replacement was hired to protect against an anticipated claim of age discrimination. Or, if the replacement is a transferred existing employee instead of a new hire, and there is evidence that all or most new hires are substantially younger, the jury could conclude the employer nevertheless reduced the overall age of its workforce by terminating some employees based upon age while hiring only younger employees. The plaintiff may also simply present enough other circumstantial evidence of age discrimination that the jury finds credible, and it may resolve any conflict created by evidence of replacement by an older person in the plaintiff's favor.

We conclude, based upon the foregoing authority, evidence that McKenzie was replaced by an older person certainly weighed against the inference that McKenzie was terminated based upon her age. It did not, however, conclusively establish the absence of age discrimination, or preclude the jury from drawing other inferences. Therefore, if other substantial evidence supports the inference that Canfield terminated McKenzie based upon her age, then we must reverse the judgment notwithstanding the verdict.

Although McKenzie was terminated before the other plaintiffs and for different stated reasons, McKenzie, as did the other plaintiffs, presented the jury with substantial evidence that the stated reasons for her termination were false or pretextual. McKenzie's notice of termination stated that she was terminated for: (1) job abandonment; (2) making discriminatory comments; and (3) failure to perform her duties. McKenzie presented evidence

---

[11]Canfield's reliance upon *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189 [48 Cal.Rptr.2d 448] is also misplaced. The court held that it was error to instruct the jury on the elements of a prima facie case, but that a jury instruction stating that a prima facie case includes evidence that the plaintiff was replaced by a younger person, was an accurate statement of the law. In fact, the plaintiff was replaced by a substantially younger person, and the court simply did not address the question whether evidence that a plaintiff is replaced by an older person within the protected class conclusively establishes the absence of age discrimination.

that these charges were false, and resolution of the conflict depended entirely on whether the jury chose to credit McKenzie, or Dianne Fenton. The trier of fact may infer the ultimate fact of intentional discrimination based upon age if it discredits the employer's stated reasons for the termination. (*St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 511 [113 S.Ct. 2742, 2749, 125 L.Ed.2d 407].)

In addition to proving that Canfield's stated reasons were false or pretextual, McKenzie also offered the same circumstantial evidence that the decision was based upon age that we held, in Canfield's appeal, constituted substantial evidence that these termination decisions were based upon age when considered together with evidence that Canfield's stated reasons were false or pretextual. This evidence consisted of the statistician's testimony, evidence that all or most of the new hires after McKenzie and the other plaintiffs terminated were substantially younger, and Dave Canfield's remark. Canfield offers no new reasons, in the context of McKenzie's appeal, why this evidence was insufficient to support an inference of age discrimination.

Ultimately, apart from the different reasons given for termination, the only other significant evidentiary difference between McKenzie's case, and that of the other plaintiffs was the evidence that McKenzie was replaced by Mary Lou Leonard, who was older than McKenzie. Leonard was not a new hire. Instead, she was transferred into McKenzie's job after her own supervisory duties had been eliminated, and she resigned her employment with Canfield one year later. Evidence was also submitted that Canfield terminated all four plaintiffs within a short period of time and they were all over age 40, and that when Canfield did hire new employees they were younger than McKenzie. For the reasons we have explained, it was for the jury to weigh the significance of the age of McKenzie's replacement against the other evidence supporting the inference that McKenzie was terminated based upon her age.

As with the other plaintiffs, Canfield presented a strong defense, yet the jury clearly credited McKenzie's testimony, and that of other witnesses for the plaintiffs, discredited the testimony of Canfield's witnesses, and resolved any conflicts in the evidence in McKenzie's favor. ■ " '[D]eterminations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder.' " (*Walther v. Lone Star Gas Co., supra,* 952 F.2d 119, 125.)

■ When reviewing an order granting a judgment notwithstanding the verdict our role is not to weigh the evidence, but rather to determine whether

any substantial evidence supported the jury verdict. We conclude that the verdict was supported by substantial evidence, and therefore reverse the order granting Canfield's motion for judgment notwithstanding the verdict, and remand with directions to enter judgment for McKenzie in accordance with the jury's verdict.

## CONCLUSION

The judgment in favor of Begnal, Ebey and Suerth is affirmed. With respect to McKenzie, we reverse the judgment, and remand with directions to enter a new judgment in McKenzie's favor in accordance with the jury's verdict. Costs to Begnal, Ebey and Suerth in Canfield's appeal. Costs to McKenzie in her appeal.

Strankman, P. J., and Marchiano, J., concurred.