**Belinda McKINNEY and Angelia Steward, Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., et al., Defendants.**

**Case No.: CV 08–02096 ABC (AJWx).**

United States District Court, C.D. California.

July 27, 2009.

which would not warrant further relief than herein granted.

Belinda McKinney, Lake Balboa, CA, pro se.

Christiane Autumn Roussell, Larry M. Lawrence, Robert J. Hendricks, Morgan Lewis and Bockius, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY ADJUDICATION IN PART AND DENYING IN PART

AUDREY B. COLLINS, Chief Judge.

Pending before the Court are Defendant American Airlines, Inc.'s ("Defendant") two motions for summary adjudication. Defendant's first motion seeks summary adjudication as to Plaintiffs Belinda McKinney's and Angelia Steward's (collectively, "Plaintiffs") First, Second, Third, Fourth and Fifth causes of action, as well as to their claim for punitive damages. (Docket # 30). The second motion seeks summary adjudication as to Plaintiffs' Sixth cause of action. (Docket # 23). Plaintiffs filed separate oppositions. (See Docket ## 53, 101).[1] Defendant filed separate replies. (Docket ## 60, 108). The matters came on for hearing on June 8, 2009. Having considered the parties' submissions, the case file, and the parties' arguments, the Court **GRANTS** Defendant's motions in part and **DENIES** them in part.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Although some of the facts here are in dispute, some of those relevant to these motions are not. The Court here outlines undisputed background information and will discuss further factual details in its analysis below as necessary.[2]

1. Until shortly before Defendant filed its motions, both Steward and McKinney were represented by Anita Grace Edwards. McKinney subsequently began representing herself pro se. (See Docket # 57). In light of her recent pro se status, McKinney was granted several extensions to file her opposition. (See, e.g., id.).

2. In determining which facts are undisputed, the Court relies in large part on Defendant's reply to Steward's statement of undisputed facts (hereinafter "SUF"), which includes Defendant's statement of undisputed facts, Steward's responsive statement, and Defendant's reply. (Docket # 61). McKinney did not file a response to Defendant's statement of undisputed facts. The Court expects pro se parties to follow the local rules. (See, e.g., Docket # 57 (explaining to McKinney that she must comply with all local rules)). Nonetheless, the factual record discussed herein is based on Defendant's and Steward's statements regarding disputed and undisputed facts, as well as evidence cited in McKinney's opposition brief and supporting papers.

The Court notes that Steward purportedly "disputes" many facts on artificial or highly technical grounds, and/or by raising tangential factual issues. For example, Steward disputes that "American's Rules of Conduct prohibited dishonesty" on the ground that the rule actually "states that dishonesty will be grounds for dismissal." SUF 15. Such artificial disputes defeat the purpose of having the parties present statements of undisputed facts. The Court will not spend its time explaining why each such fact is not actually disputed because it should be obvious upon comparing the parties' assertions. To the extent the Court finds such "disputes" to be non-existent, it will simply treat that fact as undisputed without further explanation.

Defendant's Rules of Conduct provide for dismissal in the event of employee dishonesty. SUF 15. This is known as "Rule 34." Plaintiffs both signed a document stating that "discharge and prosecution, when applicable, are mandatory" in the event of dishonesty. SUF 16. That document included "time card irregularities" as an example of dishonesty prohibited by Defendant. *See* Pls.' Ex. 9.

Steward is African–American. SUF 73. Steward began working as a planner/scheduler for Defendant in 1998 and continued in that position until her employment was terminated in August 2006. *See* SUF 74. Vivian Zaat acted as Steward's supervisor from 2002 until August 2006. SUF 2. Steward requested and was approved for family medical leave from January 20, 2006 until February 20, 2006. SUF 149. Steward actually took medical leave from sometime in January, 2006 to February 11, 2006. SUF 5.

McKinney is African–American. *See* McKinney Decl. preamble. McKinney began working for Defendant in 1992. McKinney Decl. ¶ 1. McKinney was hired by Zaat to act as a planner/scheduler in the maintenance department at LAX airport in 2002. SUF 8; McKinney Decl. ¶ 1. Zaat was McKinney's supervisor until McKinney's employment was terminated in August 2006. SUF 8. McKinney took medical leave while working in the maintenance department from January 2006 through April 2006. SUF 9; McKinney Decl. ¶ 11.

Plaintiffs were required to work an average of 40 hours per week. *See* SUF 10; *see also* SUF 226. In general, Zaat did not closely monitor Plaintiffs' time. *See* SUF 11; *see* Zaat Dep. at 64:23–25 ("I didn't want to micromanage. I wanted to give them a little freedom, trusting that they will give 40 hours a week.") For example, Zaat instructed Plaintiffs that they need not submit time cards. *See* SUF 116–17. It is also undisputed that Zaat provided Plaintiffs with flexibility to modify their schedules. SUF 13, 104–05. Nonetheless, Plaintiffs were expected to make up their missed time. *See* SUF 13; *see also* SUF 106 (there was an "honor system" regarding making up missed time).

At some point, Dorothy Robinson told Joanne Gonzalez that Plaintiffs were "nowhere around most of the time." *See* SUF 17; Robinson Dep. 70:23–71:12.[3] Although not entirely clear from the record, this comment appears to have been made in late July 2006, a few months after Plaintiffs returned from their medical leaves. *See* SUF 183 (statement was made approximately three weeks before McKinney's termination). Gonzalez understood Robinson's comment to be a complaint that Plaintiffs were not working the hours required of them. SUF 17–18. Thereafter, Gonzalez recommended to Zaat that an investigation be conducted and Zaat concurred. SUF 19, 199.

In conducting that investigation, Gonzalez pulled the turnstile records for both Plaintiffs for 2006 through that point of the year. SUF 22. The turnstile records generally reflect when an employee enters and exits the facility, though there are some alternative means of entry and egress. *See* SUF 20. Defendant uses the turnstile records as one method of verifying an employee's time when investigating her hours. *See* SUF 21. Based on Gonzalez's review of the 2006 turnstile records, it appeared to her that Plaintiffs were not working the number of hours expected of them. *See* SUF 23.

---

**3.** Robinson was a scheduler/planner like Plaintiffs. Zaat Dep. 65:19–24, 309:2–6. Gonzalez was a senior human resources specialist. SUF 82. Michael Kramer was the station manager and supervisor of Zaat and Gonzalez. *See, e.g.,* SUF 245, 247.

On July 26, 2006, Zaat and Gonzalez met with Steward to discuss their investigation into her 2006 hours. *See* SUF 44. At that meeting, Steward was asked to collect any records she had reflecting the hours she had worked and to explain specific discrepancies on various days. SUF 45. On July 27, 2006, Zaat and Gonzalez again met with Steward to discuss her 2006 hours. SUF 46. After this meeting, it was concluded that Steward was not short any hours to that point in 2006 and, instead, had worked 11 hours more than required of her. *See* SUF 47, 238.

On August 1, 2006, Steward questioned Zaat as to the status of McKinney's investigation and asked why Steward and McKinney were being "singled out." SUF 242. Steward stated to Zaat: "it doesn't look good when it's only African–Americans that are being walked out of here." SUF 242. Steward further mentioned that she had been questioned by Robinson as to the need for her medical leave and that Steward believed the investigation had created a "hostile work environment" because "nobody wants to deal with someone that has been accused of stealing." SUF 242; Steward Dep. 432:19–434:13.

At some point on or after August 1, 2006, Zaat and Gonzalez decided to investigate Steward's time for 2005. *See* SUF 48.[4] On August 15, 2006, Zaat and Gonzalez informed Steward that they were analyzing her 2005 time and asked if she had any documentation that would reflect the hours she had worked. SUF 49–50. Steward explained that she lacked such documentation. SUF 50. At the end of the meeting, Zaat informed Steward that she was being held out of service with pay pending resolution of the investigation. SUF 51. Steward, Zaat and Gonzalez met again on August 17, 2006 and discussed whether Steward had worked her full hours for 2005. *See* SUF 52–53. On August 18, 2006, Zaat terminated Steward's employment, stating that she was being fired for violating Defendant's policy against dishonesty in that she failed to work a ten-hour shift on more than 100 occasions in 2005; she failed to work at all on 12 days assigned to her; and, as a result, she failed to work more than 100 hours for which she was paid. Pls.' Ex. 90.[5]

On July 26, 2006, Zaat and Gonzalez met with McKinney to discuss their investigation into her 2006 hours. *See* SUF 24–25. McKinney was asked if she had any records showing the time she worked and McKinney indicated that she maintained time cards for her own records. SUF 26. McKinney also explained that she believed she had flexibility to come in and leave late. SUF 26. Gonzalez asked McKinney to come back for a further meeting with her documents so they could review the entries in an attempt to resolve any discrepancies. SUF 26. Zaat and Gonzalez met with McKinney again on August 1, 2006. SUF 27. McKinney brought her time cards to that meeting. SUF 28.

At the August 1, 2006 meeting, Zaat and Gonzalez gave McKinney an opportunity to explain the discrepancies in her time. SUF 29. McKinney submitted a written

---

**4.** The exact date of that decision is not clear. Defendant contends that the decision to investigate Steward's 2005 time was made based on a written statement submitted by McKinney on August 1, 2006. *See* SUF 29–31, 48. Steward contends that the decision was made based on her August 1, 2006 comment to Zaat. *See* SUF 48. Accordingly, the reason why Steward's 2005 time was investigated is disputed. *See* SUF 48. However, it appears to be undisputed that the decision to investigate Steward's 2005 was made on or after August 1, 2006.

**5.** Plaintiffs dispute the accuracy of those results, but do not provide evidence disputing that those were the results achieved by the analysis. *See* SUF 54–55.

statement at the August 1, 2006 meeting in which she stated that she believed she had the full year to make up her time. *See* SUF 31. At the end of the August 1, 2006 meeting, McKinney was informed that she was held out of service with pay pending the final resolution of the investigation. SUF 29. Some time thereafter, Gonzalez and Zaat decided to analyze McKinney's turnstile records for 2005. *See* SUF 32. The analysis of McKinney's 2005 time revealed that McKinney had not worked a ten-hour shift on over 100 occasions and that she was short by more than 100 hours in 2005. *See* SUF 33–34.[6] On August 14, 2006, Zaat terminated McKinney's employment, stating that she was being fired for violating Defendant's policy against dishonesty in that she failed to work a ten-hour shift on 40 occasions to that point in 2006; she failed to work a ten-hour shift on more than 100 occasions in 2005; and, as a result, she failed to work over 200 hours for which she was paid. Pls.' Ex. 89; SUF 36.

McKinney made two telephone calls to Defendant's employee hotline after her suspension but before her termination. SUF 37. In the August 4, 2006 call, McKinney asserted that she was being mistreated during the investigation. SUF 39–40. McKinney made the second call anonymously on August 8, 2006. SUF 42; *see also* McKinney Dep. 892:17–21. During the August 8, 2006 call, McKinney asserted that an employee was being investigated for time card fraud and she felt that this employee was being "singled out." *See* Def.'s Ex. 61.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affida-

vits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. 2505. But "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989).

In addition to the general summary judgment standards, courts have fashioned specific burden-shifting analyses for adjudicating summary judgment motions for some of the claims at issue in this case. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court will address any such standards as applicable below.

## III. ANALYSIS

Plaintiffs brought this lawsuit alleging six causes of action: (1) that Defendant discriminated against them based on race in violation of California's Fair Employ-

---

**6.** Plaintiffs dispute the accuracy of those results, but do not provide evidence disputing that those were the results achieved by the analysis. *See* SUF 33–34.

ment and Housing Act ("FEHA"), California Government Code § 12940(a); (2) that Defendant violated their rights regarding medical leave taken pursuant to the California Family Rights Act ("CFRA"), California Government Code § 12945.2; (3) that Defendant retaliated against them for engaging in protected activity in violation of FEHA, California Government Code § 12940(h); (4) that Defendant terminated their employment in violation of public policy; (5) that Defendant breached the implied covenant of good faith and fair dealing; and (6) that Defendant violated Labor Code § 1194. Defendant moved for summary adjudication as to each claim. Defendant also moved for summary adjudication as to Plaintiffs' claim for punitive damages.

## A. PLAINTIFFS' FIRST CAUSE OF ACTION—RACIAL DISCRIMINATION

 In analyzing FEHA discrimination claims on summary judgment, California courts use the burden-shifting mechanism outlined in *McDonnell Douglas*. *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000); *see also Jones v. Dept. of Corrections & Rehabilitation*, 152 Cal.App.4th 1367, 1379–80, 62 Cal.Rptr.3d 200 (2007) (applying same standards in race discrimination context).[7] A plaintiff meets her initial burden by establishing a prima facie case of discrimination, which requires the production of evidence that (1) she was a member of a protected class, (2) she was compe-

tently performing the position she held, (3) she suffered an adverse employment action, such as termination, and (4) some other circumstance suggests discriminatory motive. *Guz*, 24 Cal.4th at 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089. If a prima facie case is presented, a presumption of discrimination arises. *Id.* A defendant may rebut that presumption by producing admissible evidence sufficient to raise a genuine issue of fact that its action was taken for a legitimate, non-discriminatory reason. *Id.* at 355–56, 100 Cal.Rptr.2d 352, 8 P.3d 1089. If the defendant sustains this burden, the presumption of discrimination disappears. *Id.* at 356, 100 Cal.Rptr.2d 352, 8 P.3d 1089. At that point, the plaintiff must then provide evidence that the defendant's proffered reasons are but pretext for discrimination and/or other evidence of discriminatory motive. *Id.* The ultimate burden of actual discrimination remains with the plaintiff. *Id.*

### 1. Plaintiffs' Prima Facie Showing

Defendant preliminarily asserts that a plaintiff cannot make a prima facie showing of discrimination without establishing that her position "ultimately was filled by someone not a member of the protected class." Memo. at 11 (quoting *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir.1998)). Defendant fails to cite to any California or Ninth Circuit authority making such a holding and provides no more than a few lines of argument in support of its reading of the law.[8] The Court is unwilling to

---

7. Plaintiffs bring claims under California law, but California courts look to federal precedent when applying California's employment laws. *Guz*, 24 Cal.4th at 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089. Accordingly, this Court will rely on both California and federal precedent.

8. Defendant cites to *Coghlan v. American Seafoods Co.*, 413 F.3d 1090 (9th Cir.2005). Like other Ninth Circuit cases, *Coghlan* states that the fourth factor of the *McDonnell Douglas*

test is met by showing that "the job went to someone outside the protected class." *Id.* at 1094. But it was undisputed in *Coghlan* that the job went to someone outside of the plaintiff's protected class. *Id.* Accordingly, *Coghlan* did not address and did not hold that a plaintiff cannot make a prima facie showing absent such evidence. Rather, *Coghlan* and cases like it merely indicate that such evidence is one means to establish a prima facie case, not the only means. *See, e.g., Begnal v.*

pronounce such a rule based on the briefing before it. Indeed, the law in the Ninth Circuit and California appears to be either to the contrary or, at best, unsettled. *See, e.g., Diaz v. Am. Telephone & Telegraph,* 752 F.2d 1356, 1359–62 (9th Cir.1985) ("The district court erred in holding that because the person promoted was a member of the same protected class as Diaz, Diaz was barred from establishing a prima facie case."); *Lyons v. England,* 307 F.3d 1092, 1116–17 (9th Cir.2002) (rejecting argument that plaintiff was required to present proof that employer filled the position with a person not of the plaintiff's protected class); *Begnal,* 78 Cal.App.4th at 73–76, 92 Cal.Rptr.2d 611 (same); *see also Heard v. Lockheed Missiles & Space Co.,* 44 Cal. App.4th 1735, 1753–56, 52 Cal.Rptr.2d 620 (1996).[9]

The Court is especially reluctant to adopt Defendant's position given the unique factual situation in this case. When Plaintiffs were terminated, two vacancies were created. Only one of those vacancies was filled by an African–American candidate. The evidence further shows that Defendant does not know which Plaintiff's position was filled with the African–American candidate and which was filled with the non-African-American candidate. *See* Gonzalez Dep. at 93:10–17. Defendant has cited to no authority showing that its argument applies in this factual context and, indeed, essentially ignores this factual nuance.[10]

The Court finds it unnecessary to wade into these waters, however, because Defendant has proffered credible non-discriminatory reasons for the terminations and Plaintiffs failed to rebut that showing. *See Guz,* 24 Cal.4th at 357, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (declining to rule on whether prima facie burden had been met because case could be resolved based on proffered non-discriminatory reasons).

## 2. Defendant's Legitimate, Non– Discriminatory Reason

■ A defendant meets its burden by proffering reasons for the termination decision that are facially unrelated to prohibited bias. *Id.* at 358, 100 Cal.Rptr.2d 352, 8 P.3d 1089. To be non-discriminatory, the reasons need not have been wise or even correct. *Id.* "[T]he ultimate issue is simply whether the employer acted with a motive to discriminate illegally." *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (emphasis omitted)).

■ Defendant has produced admissible evidence that Plaintiffs' employment was terminated because they failed to work the number of hours required of them.

*Canfield & Assocs.,* 78 Cal.App.4th 66, 73–74, 92 Cal.Rptr.2d 611 (2000) (distinguishing similar cases).

9. Plaintiffs do not squarely address this particular issue but, rather, assert that such a rule should not apply in this case because the firing and replacement decisions were made by different decision makers.

10. Similarly, Defendant contends that Plaintiffs failed to make a prima facie showing because they were fired by Zaat, who had earlier hired McKinney. *See* Memo. at 12 (discussing *West v. Bechtel Corp.,* 96 Cal. App.4th 966, 980–81, 117 Cal.Rptr.2d 647

(2002)); *see also Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270–71 (9th Cir.1996). Given that Steward's claims can be resolved on other grounds, the Court declines to determine whether the "same actor" doctrine extends to instances in which the party terminating the plaintiff did not hire the plaintiff but did hire other employees in the plaintiff's protected class. The Court also finds it unnecessary to rely on this argument in deciding McKinney's claims, but notes that it appears to raise a substantial obstacle to McKinney's success on this claim. *See, e.g., Horn v. Cushman & Wakefield Western, Inc.,* 72 Cal. App.4th 798, 809 & n. 7, 85 Cal.Rptr.2d 459 (1999).

Hence, Defendant has met its burden of producing evidence of a legitimate, non-discriminatory reason for terminating Plaintiffs. Indeed, Plaintiffs do not seriously dispute that failing to work the hours for which an employee is paid is an innocent explanation for termination. Accordingly, there is no presumption of discrimination and the burden shifts to Plaintiffs to present evidence that the innocent explanation was pretextual and that the actual reason was racial discrimination.

### 3. Plaintiffs' Evidence To Rebut Defendant's Non–Discriminatory Reason

■ An employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory. *Guz*, 24 Cal.4th at 361, 100 Cal.Rptr.2d 352, 8 P.3d 1089. A rational inference of discrimination may be created "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *Morgan v. Regents of Univ. of Cal.*, 88 Cal.App.4th 52, 68–69, 105 Cal.Rptr.2d 652 (2000). A showing that the employer's decision was wrong or mistaken does not show pretext. Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for the asserted non-discriminatory

reasons.'" *Hersant v. Dept. of Social Servs.*, 57 Cal.App.4th 997, 1005, 67 Cal.Rptr.2d 483 (1997) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994)).

■ Defendant asserts that Plaintiffs can only meet that burden with circumstantial evidence if their evidence is "specific" and "substantial." *See* Memo. at 15 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998)). Although not challenged on that issue by Plaintiffs, Defendant glosses over the fact that the Ninth Circuit has called into question whether such a high level of evidence is required. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030–31 (9th Cir. 2006) (noting that requirement of "specific" and "substantial" circumstantial evidence may not have continued validity given *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), but not deciding issue); *but see Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir.2004) (finding that requirement of "specific" and "substantial" circumstantial evidence remained intact despite *Costa*). The Ninth Circuit has continued to leave the issue unresolved. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1091 & n. 6 (9th Cir.2008). The Court need not determine whether Plaintiffs were required to present "specific" and "substantial" evidence, however, because they failed to produce evidence sufficient to create a reasonable inference of discrimination.[11]

### 4. Defendant's Investigation Was Faulty

The main thrust of Plaintiffs' argument is that the investigation into their time was faulty and that Gonzalez and Zaat should

---

11. In determining whether Plaintiffs have met this burden, the Court weighs all of the evidence presented, regardless of whether it was presented as part of Plaintiffs' prima facie

showing or specifically on the issue of pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

have known that. As noted above, however, Plaintiffs cannot avoid summary judgment merely by showing that the basis for their termination was erroneous. Rather, Plaintiffs meet their burden by demonstrating that the stated reason for the termination was merely pretext and the real reason was racial discrimination. Plaintiffs' evidence regarding the potential inaccuracy of the investigation into their time fails to do that.

For example, Plaintiffs argue that Gonzalez's use of turnstile records was flawed because those records did not accurately reflect an employee's comings and goings given that other means of entry and egress existed. While Gonzalez acknowledged that the turnstile records may not always accurately reflect an employee's time, she also testified that Defendant uses those records as one method of investigating an employee's time and that she believed the turnstile records to be "the most accurate means to determine when an employee came to work and when they left and if they left in between." Gonzalez Dep. 299:19–300:4; Gonzalez Decl. ¶ 3. Moreover, the investigation did not rely on the turnstile records alone, but instead Plaintiffs were given an opportunity to dispute the results by showing that they had actually worked hours that were not recorded. Indeed, Steward was successful in rebutting the analysis of her 2006 time. Thus, while Plaintiffs may well be correct that the turnstile records are not entirely accurate, that does not show that they were discriminated against based on their race.[12]

Having reviewed all of the purported faults of the investigation itself, the Court finds that it does not provide evidence of pretext even assuming the results were not accurate.

### 5. Evidence of Disparate Treatment

Plaintiffs next argue that they can present a triable issue of fact of pretext because there is evidence that African–American employees have been treated differently than other employees working for Defendant. For such evidence to be probative of an employer's discriminatory motive, a plaintiff must show that "the employer treated 'similarly situated' employees more favorably than the plaintiff." *See, e.g., Josephs v. Pacific Bell*, 443 F.3d 1050, 1065 (9th Cir.2006) (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir.2003)). Plaintiffs proffer various instances of purported disparity, none of which are persuasive.

For example, Plaintiffs assert that non-African-American employees were not investigated for not working their full shifts. *See* Steward Opp'n at 11. To be probative evidence of discrimination, Plaintiffs would need to show that non-African-American employees, similarly situated to Plaintiffs (i.e., those who Defendant had reason to believe were not working their full shift) were not investigated. In an attempt to make that showing, Plaintiffs point to a February 15, 2006 email sent by Zaat telling employees to inform David Broer of any deviations to their schedules to ensure their time is properly recorded. *See* Pls.'

---

12. Plaintiffs attempt to poke holes in the investigation in many respects, some of which completely fail to undermine the credibility of the analysis. For example, Plaintiffs assert that Gonzalez and Zaat improperly rounded the time entries and assumed Plaintiffs took a 30–minute lunch every day. *See* SUF 222; Zaat Dep. 232:6–12. But Plaintiffs failed to take into account that such practices were relevant only to the initial review; the final review did not include either rounding of time or automatic 30–minute lunch deductions. Zaat Suppl. Decl. ¶ 4. Similarly, Plaintiffs argue that they were given flexibility in their scheduling. SUF 14. But Plaintiffs do not dispute that their time was supposed to even out by the end of the year, *see* SUF 14, and, accordingly, even if they had rearranged their shifts, that would not account for a shortfall over the entire year.

Ex. 85. Plaintiffs claim that one could infer from that email that Zaat believed employees (including, presumably, non-African-American employees) were not working their full hours but that Zaat did not investigate them. That is not a reasonable inference. Rather, the email suggests that employees were not reporting their deviations properly. Moreover, this email does not provide evidence that Zaat believed non-African-American employees were not working the hours required of them.

Plaintiffs also assert that discriminatory intent can be inferred by the fact that two African–American employees (a shift manager and a supervisor) were fired for not disciplining their subordinates found sleeping on the job, but that no Caucasian management level employees were terminated for violating Rule 34 or for not working their full shift up to the time Steward was fired. *See* Steward Opp'n at 14; *see also* SUF 95–96; Kramer Dep. 138:19–139:19. Plaintiffs are comparing apples and oranges, and the Court discerns no reasonable inference of discrimination based on the juxtaposition of those facts. Moreover, even considering the facts separately, they are not evidence of disparate treatment. First, Plaintiffs did not cite to evidence that there was any reason to believe that the Caucasian management employees were not working the hours required of them or were otherwise violating Rule 34. Second, Plaintiffs did not provide any evidence that the two fired African–American employees would have been treated any differently had they not been African–American.[13]

Plaintiffs also dispute the accuracy and/or significance of Defendant's contention that nine other employees were subject to "real" investigations for time card theft around the same time that Plaintiffs were investigated, that a non-African-American employee was fired for time card theft after Plaintiffs, and that two African–American employees were investigated but not fired. *See* Steward Opp'n at 12–13. They also dispute the significance of the fact that two hourly employees within the maintenance product area were investigated for time card fraud prior to the termination of Plaintiffs' employment. *See* Steward Opp'n at 12. Even assuming Plaintiffs' arguments had merit, however, at best that would discredit Defendant's affirmative evidence that there was no disparate treatment and would not create an inference that Plaintiffs were actually treated differently than similarly situated non-African-American employees.

In short, Plaintiffs failed to provide probative evidence of discrimination based on the purported disparate treatment on which they rely.

## 6. Defendant Lied About The Reasons For Investigating Steward's 2005 Time

Steward lastly argues that a triable issue exists because the reasons given for investigating her 2005 time are "bogus." Steward Opp'n at 15. This argument is unavailing. Even assuming De-

**13.** Plaintiffs also assert that six African–American employees worked at the LAX superbay hangar while Michael Kramer was station manager, and that four of them (including Plaintiffs) were fired. *See* Steward Opp'n at 11; SUF 86–89. Plaintiffs do not make clear if the two fired African–American employees (other than Plaintiffs) are the two employees referred to above or others. In reply, Defendant refers to other African–American employees who were terminated, specifically Anthony Evans. *See* Reply to Steward at 9. Accordingly, the Court cannot discern which employees are the basis for the four out of six statistic. In any event, however, Plaintiffs failed to show that these other African–American employees were unfairly fired. *See* *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 546 (9th Cir.1989).

fendant lied about its reasons for investigating Steward's 2005 time, that cannot save Steward's race discrimination claim, "[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination." *Guz*, 24 Cal.4th at 360–61, 100 Cal. Rptr.2d 352, 8 P.3d 1089 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 521, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). While evidence of the employer's lying might suggest it had cause to hide its true reasons, there still must be evidence supporting a rational inference that the alleged racial discrimination was the true cause of the employer's actions. *See Guz*, 24 Cal.4th at 361, 100 Cal.Rptr.2d 352, 8 P.3d 1089; *accord Hicks*, 509 U.S. at 514–15, 113 S.Ct. 2742 ("[N]othing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable.") As discussed above, such evidence is lacking as it relates to Steward's claim for racial discrimination.

### 7. Conclusion

The Court finds that Plaintiffs failed to rebut Defendant's legitimate, non-discriminatory assertion that Plaintiffs were fired for failing to work the hours required of them. Accordingly, Defendant is entitled to summary adjudication as to Plaintiffs' first cause of action.

14. As in the racial discrimination context, some case law suggests that to survive summary judgment for a retaliation claim, an employee must present "specific" and "substantial" evidence of pretext. *See, e.g., Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir.2001). As discussed above, there is a question as to the continued validity of that standard. The Court finds that

## B. PLAINTIFFS' THIRD CAUSE OF ACTION—RETALIATION FOR PROTECTED SPEECH

 As with racial discrimination claims, on summary judgment an employee's allegations of retaliation under FEHA are evaluated under the *McDonnell Douglas* burden-shifting analysis. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (2005). An employee must first establish a prima facie case of retaliation by showing that: (1) the employee engaged in protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's action. *Id.* The initial showing of a causal connection may be made by an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. *See, e.g., McRae v. Dept. of Corrections & Rehabilitation*, 142 Cal.App.4th 377, 388, 48 Cal.Rptr.3d 313 (2006).

 If a prima facie case is established, the burden then shifts to the employer to proffer a legitimate, non-retaliatory reason for its actions. *Yanowitz*, 36 Cal.4th at 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123. If the employer does so, the burden shifts back to the employee to prove intentional retaliation by providing direct or circumstantial evidence sufficient to raise a genuine issue of fact. *See id.* at 1042, 1061–62, 32 Cal.Rptr.3d 436, 116 P.3d 1123.[14]

Steward meets that heightened standard because she has produced specific and substantial evidence of pretext, while McKinney has failed to produce evidence from which a reasonable jury could conclude that she was terminated in retaliation. Accordingly, the Court need not reach the issue of whether the

### 1. Steward's Retaliation Claim

 Steward argues that there is a triable issue of fact that her employment was terminated in retaliation for protected activity. In particular, Steward points to her questioning of Zaat on August 1, 2006 as to why she and McKinney were being singled out based on their race. As to Steward's ability to establish a prima facie case of retaliation based on that August 1, 2006 interaction. Defendant asserts only that she cannot establish a causal connection between her protected activity and the termination of her employment. *See* Reply to Steward Opp'n at 23. In particular, Defendant argues that Steward cannot demonstrate causation because she was "already being investigated for theft of time" on August 1, 2006. *See id.*

The Court finds Defendant's argument unpersuasive, as there is a genuine issue of fact as to whether Steward was being investigated on August 1, 2006. It is undisputed that: (1) Steward was investigated for allegedly failing to work the hours required of her for 2006; (2) Steward was cleared of any wrongdoing based on 2006 hours on July 27, 2006; (3) Steward made her statement questioning whether the investigations of Plaintiffs were racially motivated on August 1, 2006; (4) on August 1, 2006 or a few days later, Zaat and Gonzalez decided to investigate Steward's 2005 time; (5) on August 15, 2006, Zaat and Gonzalez informed Steward that her 2005 time was being investigated; and (6) on August 18, 2006, Steward was notified that her employment was being terminated. Defendant has failed to show that there is no disputed issue of fact as to whether Steward was actually being investigated

when she made her August 1, 2006 comment. Based on the evidence presented to the Court, a reasonable jury could find that the investigation into Steward's 2006 time ceased as of July 27, 2006 and the investigation into her 2005 time did not begin until after her comment was made on August 1, 2006. Construing the disputed facts in the light most favorable to Steward, there could be a very close temporal proximity between her protected speech, the decision to investigate her 2005 time, and her firing. This is sufficient for Steward to make a prima facie showing of causation. *See McRae*, 142 Cal.App.4th at 388, 48 Cal.Rptr.3d 313.

As noted above, Defendant has proffered a legitimate, non-discriminatory reason for terminating Steward's employment; namely, that she had not worked the hours required of her. Thus, the burden shifts back to Steward, who can defeat summary judgment by presenting evidence of the temporal proximity of the protected activity and the adverse employment action, combined with a basis for disbelieving any facially neutral reasons proffered by the employer for the adverse employment action challenged. *See Miller v. Fairchild Indus.*, 885 F.2d 498, 505–506 (9th Cir. 1989).[15] Steward has made such a showing.

Not only is Steward's retaliation claim supported by the timing of events, but a reasonable jury could find Defendant's reasons pretextual. Differentiating between the investigations into Steward's 2006 time and 2005 time is important here. On July 27, 2006, Zaat and Gonzalez concluded that Steward had not only worked

"specific" and "substantial" standard continues to apply in the retaliation context.

**15.** The case law provided by Defendant is not to the contrary. In *Loggins v. Kaiser Permanente,* the California Court of Appeal held that

temporal proximity, "without more," does not create a triable issue of fact as to pretext. 151 Cal.App.4th 1102, 1112, 60 Cal.Rptr.3d 45 (2007). As discussed below, Steward has presented evidence of pretext beyond temporal proximity.

the hours required of her to that point in 2006, but also that she had worked 11 hours *more* than the amount required. Moreover, Zaat testified that she had previously given Steward positive reviews and had no reason to doubt Steward was working the hours required of her. *See* Zaat Dep. 69:9–13, 283:14–288:4, 319:7–11. Thus, it appears that as of July 27, 2006, Defendant had no reason to believe that Steward had not been working the hours required of her.

On August 1, 2006, Steward complained to Zaat that she and McKinney were treated unfairly based on their race. On that day or within the next few days, Zaat and Gonzalez decided to investigate Steward's 2005 time. Significantly, Zaat's and Gonzalez's reason for investigating Steward's 2005 hours proffered during their depositions was not that they had any reason to believe she had not worked a sufficient number of hours in 2005.

Moreover, the reasons given for investigating Steward's 2005 time are so weak and implausible that a reasonable jury could believe that the termination was actually made to retaliate against Steward. Both Zaat and Gonzalez testified as to why

Steward's 2005 hours were investigated. Zaat testified as follows:

> Because we—Ms. McKinney, because her hours were short, she said, "I thought I had the whole year to make it up." We pulled Ms. McKinney's turnstile times for 2005 and, in all fairness, [sic] to pull Ms. Steward's also.

Zaat Dep. at 398:3–7. Gonzalez provided a different take on the reasons for investigating Steward's 2005 time:

> The reason that we considered looking at [Steward's] 2005 time was in part for the reason that they were both named initially and that they covered each other's shifts. So they actually worked opposite each other, and they covered each other's shifts for time away from work. And those are probably the main two reasons.

Gonzalez 450:6–12.[16] A jury could find that this testimony does not hold water.

McKinney's 2005 hours were investigated because she was unable to establish that she had actually worked the amount of time required of her in 2006. *See* Gonzalez Dep. 427:22–23 (testifying that while McKinney disputed that she was short on hours for 2006, "she didn't have any rea-

---

**16.** Gonzalez's testimony can be read in one of two ways. First, her testimony could be an attempt to explain that Zaat and Gonzalez investigated Steward's 2005 hours in order to be fair to McKinney. This appears to be how Defendant interprets Gonzalez's testimony. Memo, at 9 ("However, given McKinney's statements about having a full year to make-up the time and the decision to review McKinney's time for 2005, it was also decided that, to be fair and consistent, Steward's time for 2005 should also be reviewed. (Gonzalez Dep. 450:2–451:2)."). To the extent that is the explanation that Gonzalez had in mind, the Court finds that a jury could find it pretextual for the reasons discussed above.

Second, although not clear, Gonzalez's testimony could also be read to mean that, because Steward and McKinney covered for each other, a full picture of McKinney's time could only be determined by looking at Stew-

ard's time. As an initial matter, if that is Gonzalez's explanation, the Court finds it inconsistent with Zaat's testimony and cause for a reasonable jury to find pretext. Even if that were not the case, however, the Court does not see any basis in the record making it unreasonable for a jury to conclude that such an explanation is pretextual. For example, while examining Steward's time for particular days or weeks may have been relevant to understanding McKinney's work schedule, that does not explain why Zaat and Gonzalez would evaluate Steward's time for the year as a whole (*i.e.*, whether her total hours for the year added up to the total amount required of her). Moreover, such an explanation is undermined by the fact that Zaat's and Robinson's 2005 turnstile records were not analyzed despite the fact that they also both covered for McKinney in 2005. *See* SUF 48.

sonable explanation to offset it"). Thus, her 2005 time was reviewed to see if she could be exonerated based on her assertion that she believed she had one year to make up any time that she was short. *See* Gonzalez Dep. at 427:9–13 ("[I]f at the end of the year [2005] all of that time, it all became a wash, then we would understand why an employee would believe they had the whole year to make it up, *and then we would have possibly given her that option.*" (emphasis added)); Gonzalez Dep. at 426:8–12 ("We decided let's look at 2005. If that's the case, if we go back and look and the whole year is a wash by the last day of the year of 2005, as her statement stipulates, then we would—maybe that was an option. I don't know that we had drawn a conclusion that it wasn't."); *see also* Zaat Dep. at 250:5–11 (suggesting that McKinney would have been given an opportunity to make up her 2006 time if she had worked the full amount of time required of her in 2005).

Thus, Gonzalez's and Zaat's testimony is that McKinney's 2005 hours were investigated to see if any shortcoming in her 2006 hours could be explained by her assertion that she believed she could make up hours through the year. Their testimony indicates that they did not review McKinney's 2005 hours in an effort to incriminate her further. Unlike McKinney, there was no need to check Steward's 2005 time because she had already exonerated herself by persuading Zaat that she was not actually short on time in 2006. Accordingly, the asserted "fairness" reason for investigating Steward's 2005 is so illogical and weak that a reasonable jury could find that the investigation was initiated to contrive a reason for discharging Steward.

In short, the Court finds that Defendant is not entitled to summary judgment as to Steward's retaliation claim. Together with the very close temporal proximity, the investigation of Steward's 2005 time without any indication that it would reveal she had not worked the hours required and the fact that the asserted reasons for investigating Steward's 2005 time are illogical, implausible and very weak, a reasonable jury could find that Steward's employment was terminated for purposes of retaliation.[17]

**2. McKinney's Retaliation Claim**

While the Court finds that Steward's retaliation claim survives summary judgment, the same is not true for McKinney's claim. Even assuming that McKinney has made a prima facie showing of retaliation, the Court concludes that she has failed to raise an inference of pretext. That conclusion is warranted because McKinney's claim suffers from two critical defects not at issue for Steward.

First, McKinney made the relevant phone calls to Defendant in August 2006;[18] however, she was being investigat-

17. Although not addressed in Steward's opposition, the Court also finds it noteworthy that Zaat's and Gonzalez's deposition testimony appears to be inconsistent with the statements they made to Steward at the time they were investigating her. *See* SUF 243 (Steward was told at the August 15, 2006 meeting that "there was another anonymous tip and that [Zaat and Gonzalez] needed to go back to 2005"); Pls.' Ex. 90 ("[o]n July 31, 2006, the Company received information that on numerous occasions in 2 005, you were not working your scheduled 10 hour shifts.") Because this issue was not sufficiently briefed by the parties, however, the Court does not rely

on this apparent inconsistency in reaching its holding that Steward has met her burden of showing pretext.

18. McKinney asserts in her opposition that she also complained about *inter alia* Robinson "causing trouble among staff members" and that she felt harassed by Robinson, given Robinson's objections to McKinney covering a shift for Steward. *See* McKinney Opp'n at 25; Memo. at 19. Such complaints do not constitute protected conduct. *See Yanowitz,* 36 Cal.4th at 1047, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (to be protected, an employee's "activity must oppose activity the employee reasonably

ed for not working the hours required of her as of at least July 26, 2006. Thus, there is no dispute that McKinney's purportedly protected activity occurred while Defendant was investigating her for not working the hours required of her. This timing significantly undermines McKinney's retaliation claim because the ultimate decision to terminate her employment was simply the completion of the disciplinary process that had already been initiated at the time of her statements. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1324–25 (10th Cir.1997).

Second, unlike Steward, McKinney has failed to sufficiently undermine the validity of the reasons provided for investigating her 2005 time. Zaat and Gonzalez reviewed McKinney's 2006 time and found that she had not worked the hours required of her. McKinney stated that she thought she had until the end of the year to make up any missing time. Zaat's and Gonzalez's decision to review McKinney's 2005 time to see if her excuse was actually valid and, if it was, to possibly give McKinney the opportunity to make up the missing time potentially benefitted McKinney.

Accordingly, viewing the facts as a whole, the Court concludes that McKinney failed to create a triable issue of fact that the termination of her employment was in retaliation for protected activity.

## C. PLAINTIFFS' SECOND CAUSE OF ACTION—TERMINATION BASED ON THE TAKING OF MEDICAL LEAVE

### 1. Plaintiffs' Pleaded Cause of Action

For Plaintiffs to recover on their claims under the CFRA, they must establish that (1) Defendant was an employer covered by the CFRA; (2) Plaintiffs were employees eligible to take CFRA leave; (3) Plaintiffs exercised their right to take leave for a qualifying CFRA purpose; and (4) Plaintiffs suffered an adverse employment action such as termination because of their exercise of the right to CFRA leave. *Dudley v. Department of Transportation,* 90 Cal.App.4th 255, 261, 108 Cal.Rptr.2d 739 (2001).[19]

While the elements of Plaintiffs' CFRA claim are not disputed, the parties disagree as to the standard to be used on summary judgment. Plaintiffs correctly note that the Ninth Circuit has held that the *McDonnell Douglas* burden-shifting analysis does not apply to parallel federal claims based on allegations that a plaintiff's employment was terminated in part because she previously exercised her right to take medical leave. *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1125 (9th Cir.2001).[20] The Ninth Circuit subsequently extended that holding to encompass CFRA claims, as well. *Liu v. Amway Corp.,* 347 F.3d 1125, 1132 n. 4, 1136 (9th Cir.2003). The California Court of Appeal, however, has continued to use the *McDonnell Douglas* burden-shifting analysis for such CFRA claims. *See, e.g., Faust v. California Portland Cement Co.,* 150 Cal.App.4th 864, 885, 58 Cal.Rptr.3d 729 (2007).[21]

---

believes constitutes unlawful discrimination, and complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct").

**19.** Defendant does not dispute that Plaintiffs could satisfy the first three elements of a CFRA claim.

**20.** Rather than acknowledge Ninth Circuit authority on this point, Defendant argues that

*McDonnell Douglas* applies based on out-of-circuit authority. *See* Reply to Steward at 22. In light of the Ninth Circuit holdings, the Court will not follow that authority.

**21.** The Court notes that the apparent inconsistency may be the result of the Ninth Circuit framing this type of claim as one for "interference" and the California courts framing it as one for "retaliation." *See Jadwin v. County of*

■ The Court need not decide which standard is appropriate, however, given that Plaintiffs' claims cannot survive under either standard. Accordingly, the Court will analyze their claims under the more lenient *Liu* standard. To successfully oppose summary judgment, Plaintiffs must show that there is a triable issue of material fact as to whether the CFRA leave taken by Plaintiffs was impermissibly considered as a factor in the termination of their employment. *Liu,* 347 F.3d at 1136. Plaintiffs rely entirely on circumstantial evidence in opposing summary judgment.

■ First, Plaintiffs argue that Gonzalez and Zaat discussed the medical leave while investigating Plaintiffs' time. *See* Steward Opp'n at 21–22. This evidence could not lead to an inference that Plaintiffs were fired due to their taking medical leave. Plaintiffs have presented no evidence to counter Defendant's evidence that the medical leave was discussed to ensure that the absences were not counted against Plaintiffs in deciding whether they had worked the hours required of them. *See* Supp. Zaat Decl. ¶ 3. It is neither surprising nor suspicious that the medical leave would be discussed in analyzing Plaintiffs' hours.

Second, Plaintiffs point to that fact that Zaat notified Robinson that there would be a shortage in the department during the time that McKinney and Steward were out on medical leaves. *See* Zaat Dep. at 141:5–12. Once again, this evidence is neither surprising nor suspicious. Certainly an employer has the ability to discuss how to manage workload and coordinate coverage during the period in which an employee (or, in this case, two employees) is on medical leave. *See also* SUF 153 (Robinson, Pope and Zaat all covered for Steward

during her medical leave). Indeed, Steward herself stated that, prior to taking medical leave, she discussed with Zaat and Robinson the handling of her workload in her absence. SUF 144.

Lastly, Plaintiffs assert that Robinson expressed displeasure at having to work extra hours during their medical leave. *See* SUF 155, 158. Plaintiffs also assert that Robinson had complained to Zaat about her extra workload during their medical leave. SUF 161–162.[22] Even assuming Robinson sought to retaliate against Plaintiffs for taking medical leave. Plaintiffs fail to explain why that motive should be imputed to Zaat. That Plaintiffs would not have been fired but for Robinson's later complaint against them is not enough. *See, e.g., Poland v. Chertoff,* 494 F.3d 1174, 1181–82 (9th Cir.2007). Instead, Plaintiffs would need to establish that the decision to terminate their employment was "not actually independent [of Robinson's purported bias related to medical leave] because [Robinson] influenced or was involved in the decision or the investigation leading thereto." *Id.* at 1184. Plaintiffs failed to make such a showing of Robinson's involvement in the investigation or decision to terminate.

Accordingly, the Court finds that Plaintiffs failed to raise a triable issue of fact that their employment was terminated because they took medical leave.

#### 2. Steward's Newly Raised Cause of Action

■ In opposing summary judgment. Steward also raised a new CFRA claim distinct from that alleged in the complaint. Specifically, Steward contends that Defendant violated the CFRA by forcing her to return early from her medical leave

*Kern,* 610 F.Supp.2d 1129, 1174 (E.D.Cal. 2009).

**22.** The assertion from Robinson that initiated the relevant investigations occurred later,

however, when Plaintiffs were not on medical leave.

in February 2006. Steward Opp'n at 20–21. This assertion fails for several reasons. For example. Defendant argues that such allegations should be disregarded because they were raised for the first time in opposing summary judgment. Reply to Steward Opp'n at 16–17. Defendant's point is well-taken. Rather than alleging this claim in the complaint, Steward instead waited until roughly three months after the close of discovery to provide Defendant with notice of it. *See* Docket # 11 (setting nonexpert discovery cutoff as December 15, 2008). Unless a plaintiff includes allegations in her complaint or informs the defendant before the close of discovery of her intent to rely on previously undisclosed allegations, she may not assert them for the first time in opposing summary judgment. *See, e.g., Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1291–94 (9th Cir.2000). In this case, Steward did neither. Accordingly, the Court rejects Steward's allegations that Defendant violated the CFRA by forcing her to return early from medical leave.[23]

## D. PLAINTIFFS' FOURTH CAUSE OF ACTION—TERMINATION IN VIOLATION OF PUBLIC POLICY

The parties agree that Plaintiffs' claims for wrongful termination in violation of public policy rise or fall on whether they have viable claims under FEHA. *See* Steward Opp'n at 24; McKinney Opp'n at 27; Reply to Steward Opp'n at 23–24.[24] Accordingly, for the reasons discussed above, the Court grants Defendants' motion for summary adjudication on this claim except as to Steward's claim based on her assertion that her employment was terminated as a result of her August 1, 2006 statement.

## E. PLAINTIFFS' FIFTH CAUSE OF ACTION—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Defendant moved for summary adjudication as to Plaintiffs' fifth cause of action alleging breach of the implied covenant of good faith and fair dealing. Memo. at 22–23. Plaintiffs did not oppose that aspect of the motion. Having reviewed the record and arguments of counsel, the Court finds that summary adjudication on that claim is appropriate.[25]

## F. PLAINTIFFS' SIXTH CAUSE OF ACTION—VIOLATION OF LABOR CODE § 1194

Defendant also moved for summary adjudication as to Plaintiffs' sixth cause of action alleging violation of Labor Code § 1194. Plaintiffs did not oppose that aspect of the motion. Having reviewed the record and arguments of counsel, the

---

23. Even if that were not the case, the Court finds it highly unlikely that Steward could succeed on this claim. For example, Steward would have had to exhaust her administrative remedies as to this claim before bringing suit. *See, e.g., Mora v. Chem–Tronics, Inc.,* 16 F.Supp.2d 1192, 1201 (S.D.Cal.1998). But this claim does not appear to be "like or reasonably related" to the allegations made in her charge of discrimination filed with the Department of Fair Employment and Housing. *See Okoli v. Lockheed Tech. Operations Co.,* 36 Cal.App.4th 1607, 1615, 43 Cal. Rptr.2d 57 (1995).

24. Plaintiffs do not dispute that their claim fails to the extent it is based on Labor Code § 232. Having reviewed the record and arguments of counsel, the Court finds that summary adjudication on that claim is appropriate.

25. The Court previously indicated that it would grant summary adjudication on the fifth and sixth causes of action as to Steward. February 12, 2009 Minute Order (Docket # 57). That minute order, however, did not address the summary adjudication motion on those causes of action as to McKinney.

Court finds that summary adjudication on that claim is appropriate.

### G. PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES

■■■■ For Steward to recover punitive damages, she must show that an officer, director or managing agent personally engaged in oppressive, fraudulent, or malicious conduct towards her. *White v. Ultramar, Inc.*, 21 Cal.4th 563, 577, 88 Cal. Rptr.2d 19, 981 P.2d 944 (1999).[26] Steward focuses her argument on Danny Martinez, Vice President of Line Maintenance, who rejected her appeal of the termination decision. SUF 248.[27] To be awarded punitive damages vis-a-vis Martinez's actions, Steward must show that he "ratified" the termination decision, which "generally occurs where, under the particular circumstances, the employer demonstrates an intent to adopt or approve oppressive, fraudulent, or malicious behavior by an employee in the performance of his job duties." *College Hosp. Inc. v. Superior Court*, 8 Cal.4th 704, 726, 34 Cal. Rptr.2d 898, 882 P.2d 894 (1994). "Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature." *Id.*

■■■■ The evidence presented by Steward does not raise a triable issue of fact that Martinez intended to approve an oppressive, fraudulent or malicious termination decision. Steward's claim based on alleged retaliation for her August 1, 2006 comment is the only claim that survives summary judgment. Following her notice of termination on August 18, 2006, Steward appealed to Martinez in a written letter, addressing her concerns that her firing was unfair. *See* SUF 248. But that letter did not mention her August 1, 2006 comment, *see* Pls.' Ex. 39, and Steward otherwise failed to present evidence that Martinez knew of that comment or was made aware that she felt she was retaliated against on the basis of protected speech. Accordingly, Defendant is entitled to summary adjudication as to Steward's claim for punitive damages.

## IV. CONCLUSION

For the reasons stated above, Defendant's motions for summary adjudication are **GRANTED** in part and **DENIED** in part as follows:

- Defendant's motion as to Plaintiffs' First cause of action for racial discrimination is **GRANTED**;
- Defendant's motion as to Plaintiffs' Second cause of action for unlawful termination under the CFRA is **GRANTED**;
- Defendant's motion as to Plaintiffs' Third cause of action for unlawful retaliation based on protected speech is **DENIED** as to Steward and **GRANTED** as to McKinney;

---

**26.** Because McKinney does not have claims that survive summary judgment, this issue is moot as to her claims.

**27.** Steward also asserts in passing that "[t]he conduct by Gonzalez" is grounds for awarding punitive damages. Steward Opp'n at 25. The Court notes that Steward purports to dispute whether Gonzalez was a "managing agent" of Defendant. *See* SUF 72; *see also* SUF 71 (no dispute that Gonzalez was not an officer or director). But the California Supreme Court has made clear that "supervisors who have no discretionary authority over decisions that *ultimately determine corporate policy* would not be considered managing agents even though they may have the ability to hire or fire other employees." *White,* 21 Cal.4th at 577, 88 Cal.Rptr.2d 19, 981 P.2d 944 (emphasis added). In disputing this fact, Steward failed to present evidence that Gonzalez had the authority to determine corporate policy or otherwise possessed the type of discretionary authority required to find her to be a managing agent. *See* SUF 72. Accordingly, there is no genuine issue of fact that she was not a managing agent.

- Defendant's motion as to Plaintiffs' Fourth cause of action for wrongful termination in violation of public policy is **DENIED** as to Steward and **GRANTED** as to McKinney;
- Defendant's motion as to Plaintiffs' Fifth cause of action for breach of the implied covenant of good faith and fair dealing is **GRANTED;**
- Defendant's motion as to Plaintiffs' Sixth cause of action for violations of Labor Code § 1194 is **GRANTED;**
- Defendant's motion as to Plaintiffs' request for punitive damages is **GRANTED** as to Steward and **DE-NIED** as moot as to McKinney.

**IT IS SO ORDERED.**[28]

---

[28] Defendant filed evidentiary objections with respect to the pending motions. The Court has considered these objections in reaching the conclusions herein and the objections are overruled to the extent that they are inconsistent with this ruling. *See Gates v. Deukmejian,* 987 F.2d 1392, 1400 (9th Cir.1992); *Truck Terminals, Inc. v. C.I.R.,* 314 F.2d 449, 454 (9th Cir.1963).

Defendant filed requests for judicial notice. (Docket ## 27, 65). As the Court does not rely on the documents attached, the requests are **DENIED** as moot.